WILLIAM B. SINCLAIR

*v.*

HELEN M. SINCLAIR.

[Decided May 30th, 1898. Filed June 20th, 1898.]

1. Where a defendant's testimony is discredited by documentary proofs and by the contradiction of other and disinterested witnesses in relating facts of which all may have knowledge, her testimony cannot be relied upon when narrating incidents (the truth of which is essential to her defence) which lie solely within her knowledge.

2. When a woman who is with child conceals that fact, and induces a man who has had no sexual relations with her to go through the ceremony of marriage to her in good faith, and the man on discovering the truth separates from her and files his bill in this court for a declaration that the supposed marriage contract is a nullity because of the fraud she has put upon him, he is entitled to a decree that the supposed marriage has been void *ab initio.*

3. A counsel fee will not be allowed the defendant on a bill filed by a man to declare his supposed marriage to a woman to be a nullity.

*Mr. Isaac W. Carmichael,* for the complainant.

*Mr. Malcolm MacLear,* for the defendant.

GREY, V. C.

In this case the complainant seeks to have the marriage between him and the defendant to be declared void because he alleges that he had no carnal knowledge of the defendant before the marriage; that she induced him to enter into the contract fraudulently concealing the fact that she was at that time with child by another man, and that he did not discover this until some months after the marriage, since which time he has not associated in any way with his wife.

This charge against the defendant she explicitly denies. She admits that she was with child when she married the complainant, but she insists that they had sexual relations before the marriage, and that he was the father of the child of which she

was enciente at the time of the marriage. She testifies that she had no attentions from any other man than the complainant before her marriage to him.

The marriage took place in May, 1894, and the defendant on her own insistment went with her mother to California on a visit to her sister in October, 1894. She gave birth to a child admitted to have been born after the full period of gestation, on the 17th day of November, 1894. Numerous letters from the defendant to the complainant are produced. There are four or five written after November 17th, 1894; in these the birth of the child is not referred to. She declares that all these letters are forgeries because, she says, she mentioned the baby in every letter she wrote after its birth.

The contention of the complainant is that the defendant contrived the visit to California for the purpose of concealing from him the date when the child would be born, and to make him believe its birth was at the full period of nine months after the marriage; that when the child was born on November 17th, only six months after the marriage, she wrote the letters shortly after that date, and up to February 17th, 1895, making no reference to the birth of the child, and at the latter date she wrote the first letter mentioning the birth of the child. This letter is not dated; it states that the child was born " on the 17th of the month," without stating what month. This letter the complainant states he received by mail in an envelope post-marked February 26th, 1895.

The defendant admits this letter is genuine, but states that it has been transferred from an envelope in fact mailed in November, 1894, shortly after the birth of the child, to make it appear that it was written and sent in February, 1895.

From the above narration of the positions of the parties it is quite plain that the truth of the wife's statements may be tested by examining whether the evidence indicates that she had received prior to her marriage, from a man other than her husband, those attentions which she testifies she never had, and whether the weight of the proofs shows that the first letter referring to the birth of the child was, in fact, written and sent in

Sinclair *v.* Sinclair.

the latter part of February, 1895, and whether the letters written from defendant to complainant after the birth of the child and before February, 1895, which make no mention of the child, are forgeries as stated by the defendant. .

The defendant, in the broadest terms, denies that she had accepted any attentions from any other man than her husband at or before the time of her marriage. The testimony of a disinterested witness shows that she did, in fact, receive the attentions of a man whose engagements brought him almost daily to the house where she lived. With this same man she is shown to have been sitting up in private at night, frequently after all the members of the family had gone to bed ; this was for some time previous to the marriage and probably after it. She is also shown to have been seen sitting in this man's lap within the period of time that she denies any attentions. When a woman permits a man to take her on his lap, the belief that he had made some progress in her affections, is certainly natural. But when, in connection with the proof of this fact, it appears that she desires to create the impression that she received no such attentions, and the fact is only disclosed by the evidence of an unobserved witness, her denial leaves her veracity in doubt. If her claims that the letters are forgeries, and that the letter announcing the birth of the child was transferred from its envelope, are to be accepted as true, it must be upon the testimony of the defendant alone. If she, interested to defend herself, is discredited in matters touching which a disinterested witness testifies, how can she be believed when testifying of matters which she knows lie solely in her own knowledge ? I am compelled to believe that the defendant was consciously falsifying when she denied that she had received any attentions from any other man than her husband, and her credibility being thus impeached the value of her testimony on other points must be lessened accordingly.

Taking up the question of the alleged forged letters written shortly after the date of the birth. The defendant testifies that she wrote no such letters, and her only reason for the denial of them is her assertion that she wrote no letters after the birth which did not mention the child. These letters, some three or

four, can be compared with a large number of admittedly-gen-
uine letters written by the defendant. They have been com-
pared by an expert who swears they are genuine. I think they
plainly show on examination that they were written by the same
hand as were the admittedly-genuine letters. If these letters be
forgeries they must have been wholly forged or changed. by the
complainant, who produces them and claims to have received
them by due course of mail. They are accompanied by en-
velopes bearing mail-stamping of dates corresponding to the
dates of the letters. This is of no great evidential force, as the
letters, if forged, might have been placed in the genuine en-
velopes. But the chirography of the letters which are chal-
lenged is evidently the same as those which the defendant admits
she did write, and the addresses on the envelopes are of like gen-
uineness. These letters cannot be held to be forgeries, either by
original preparation or by change, unless it is also considered
that the complainant has added perjury to forgery in his effort
to maintain their truth. His evidence is not contradicted by
any other witness than the defendant, and is in fact supported
both by the documentary proofs and outside witnesses. The
letters must be accepted as genuine.

The most convincing evidence of the defendant's untruth is,
however, found in the utter failure of her claim that the letter
announcing that the child had been born "on the 17th of the
month" was written and sent in November, 1894, and not in
February, 1895. This letter was received from the post-office
by the complainant, as he swears, in the latter part of February,
1895. His father was with him at the time and corroborates
the statement of his son. The letter was opened by the com-
plainant and shown to his father. Both noticed that the letter
had no date and that the date of the post-office stamping was in
February, 1895. Both were anxious to know when the child
was born, and observed the oddity of the wording and want of
date in the letter.

This testimony of the complainant, supported by that of his
father, and the character of the letter itself, compel the belief
that it was sent in February and not in the preceding November.

15

On arriving at these conclusions on these points, the whole fabric of the defence falls to pieces. Its character is such that the failure puts the defendant in the worst possible position, because if the defence set up is false, the proffer of it and its refutation are overwhelmingly convicting. It is like a case where all the circumstances show that a man has committed a crime, except one theory and that depends upon an *alibi,* which the defendant attempts to prove, and makes no other defence, and fails to sustain his *alibi.* If every other circumstance points to his having committed the crime, and he fails in his *alibi,* the conclusion is almost forced that he must be guilty.

This woman's whole defence depends on her claim that her husband did have connection with her before their marriage and begot her child, and all these other facts are necessary to support that theory. Yet she is contradicted by her husband as to the first fact, and where it is possible to contradict her she is opposed by outside witnesses and by her own letters. Nothing is shown which would lead me to doubt the truth of the testimony of these disinterested witnesses.

In my view the complainant has shown that at the time of their marriage the defendant was with child by another man, and fraudulently concealed this fact from him. This condition made it impossible that the defendant could at the time of her marriage perform that part of her marriage contract which bound her to accept impregnation only from him.

A series of facts substantially the same as those presented in this case was shown in the case of *Carris v. Carris, 9 C. E. Gr. 516.* The question of the jurisdiction of this court to declare a marriage to be void for such a fraud was fully considered by the court of errors and appeals and was sustained. This case has been followed in several others in this state, and it seems to be settled that such a fraud where the husband had no antenuptial sexual relations with his wife, and has not condoned her fault on discovering it, may be the basis of a decree by this court declaring the marriage contract to be void *ab initio.* The evidence in this case justifies such a decree, and I will advise it.

Mr. MacLear, of counsel for defendant, asked that a fee be allowed him,

The Vice-Chancellor—As to the question of a fee to Mr. Mac-Lear as counsel for defendant: A bill to nullify a marriage stands on a different footing from a bill for a divorce. The former bill does not pray that the complainant shall be divorced from the bonds of matrimony, but it sets out the ceremony of marriage, the incidents of the fraud which has been perpetrated, and asks that the marriage may be declared a nullity *ab initio*. The rule allowing counsel fees in divorce cases is based upon the existence of the relation of husband and wife, and the obligation of the husband to support his wife; but where a final decree of nullity is made it establishes the fact that there never was any relation which created such an obligation.

I will hear counsel, if they desire it, on the point whether in such a case a fee to the defendant's counsel can properly be allowed and charged against the complainant, who in the same decree is declared never to have been her husband. In my present view there can be no such allowance.