HARRIET E. SLEICHER, Appellant, v. CHARLES A. SLEICHER, Respondent.

(Argued April 22, 1929; decided July 11, 1929.)

*Clinton T. Taylor* and *Charles W. Bacon* for appellant. The jurisdiction of the court which rendered the judgment of annulment pleaded by the plaintiff cannot be assailed collaterally by a motion based upon the pleadings and the judgment is conclusive until set aside or reversed by a direct proceeding. (*Ferguson* v. *Crawford*, 70 N. Y. 253.) The Supreme Court has jurisdiction of an action to annul a marriage on the ground of the fraud of one of the parties in concealing the fact that prior to, up to and including the time of such marriage, he was insane. (*Svenson* v. *Svenson*, 178 N. Y. 54; *Rutstein* v. *Rutstein*, 221 App. Div. 70; *Truiano* v. *Truiano*, 121 Misc. Rep. 635; *Finch* v. *Goldstein*, 245 N. Y. 300; *Griffin* v. *Griffin*, 122 Misc. Rep. 837; 209 App. Div. 883; *Smith* v. *Smith*, 112 Misc. Rep. 371; *Hughes* v. *Jones*, 116 N. Y. 67.) A judgment annulling a marriage restores the parties thereto to the status which existed prior to such marriage. (*Matter of Moncrief*, 235 N. Y. 390; *Matter of Mortens*, 130 Misc. Rep. 34.)

*Frank H. Deal* for respondent. Anyone may contest a final judgment of annulment for lack of jurisdiction, fraud, collusion or any jurisdictional fact. (*Davidson* v. *Ream*, 178 App. Div. 362.) The contract upon which

the action is brought has terminated under its own terms. (*Matter of McKinley*, 66 Misc. Rep. 126; *Hayden* v. *Hayden*, 127 Misc. Rep. 162; *Valleau* v. *Valleau*, 6 Paige, 207; *Taylor* v. *Taylor*, 63 App. Div. 231; *White* v. *White*, 1 Redf. 376; *Matter of Kutter*, 79 Misc. Rep. 74.)

CARDOZO, Ch. J.   Plaintiff and defendant were married in 1908.   By a separation agreement made in 1923, the defendant, the husband, promised to pay to his wife, the plaintiff, for her support and maintenance $400 monthly from April, 1923, to June, 1924, and $350 monthly thereafter.   In case of divorce, he consented that allowance for alimony at the same rate be incorporated in the decree, " to continue so long as she remains unmarried."   A court of competent jurisdiction in Nevada gave judgment for divorce in October of the same year. By the judgment " all demands for alimony, maintenance and support " were declared to be " fixed and prescribed " by the separation agreement, which was made part of the decree as if incorporated therein.

Plaintiff contracted a second marriage with one Hannum on August 16, 1924, and thereafter brought suit in this State to annul it on the ground of fraud.   Judgment of annulment was granted on August 17, 1927, the basis of the decree being the fraud of the husband " in fraudulently concealing from the plaintiff the fact that prior to, up to and including the time of said marriage, he was insane."   Alimony payments ceased upon the second marriage, and have never been resumed.   This action, begun in February, 1928, is brought to recover the unpaid installments.   The plaintiff claims that the right to alimony revived when the second marriage was annulled for fraud avoiding it from the beginning, and that the effect of the revivor was not merely to charge the defendant with a prospective liability for installments falling due from the time of the annulment, but to charge him retrospectively with installments lawfully withheld while

the second marriage was in force. We think the liability should be adjudged as to the future, but denied as to the past.

A marriage procured by fraud is voidable, not void. Even so, annulment when decreed, puts an end to it from the beginning (*Matter of Moncrief*, 235 N. Y. 390; *American Surety Co.* v. *Conner*, 251 N. Y. 1). It is not dissolved as upon divorce. It is effaced as if it had never been. From then on, payments to either spouse may be demanded and must be made on the footing of its nullity. This is true, according to the holding of some courts, where bequests of income are to be paid until remarriage (*Matter of Wombwell's Settlement*, L. R. [1922] 2 Ch. 298; *Matter of Garnett*, [1905] 74 L. J. [Ch.] 570). It is true and for like reasons where installments of alimony are to be paid under a judgment. A marriage is unreal if procured by force or fraud.

The retroactive effect of rescission from the beginning is not, however, without limits, prescribed by policy and justice. These limits are not unknown even in controversies between parties or privies to the rescinded act (*American Surety Co.* v. *Conner, supra*), but they have their typical application to the rights and duties of a stranger. For the stranger, rescission from the beginning is a watchword to be heeded when an act to be thereafter done with reference to one or other of the parties may be governed or affected by the time or quality of the severance. It does not express a rule that reaches back into the past and lays upon innocence the opprobrium of guilt. The defendant, the first husband, must now comply with the mandate of the judgment of divorce and provide for his former wife as for one who has not remarried. This does not mean, as we view it, that he must provide for her during the years when the voidable remarriage was in force and unavoided.

" The doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice " (*Gibson* v.

*Chouteau*, 13 Wall. [U. S.] 92, 101; *Lynch* v. *Bernal*, 9 id. 315, 325). It becomes an instrument of injustice when used to change the quality of intervening acts or omissions by strangers to the controversy. The courts have shaped and restrained it in adaptation to its purpose (*Cook* v. *Tullis*, 18 Wall. [U. S.] 332; *Taylor* v. *Robinson*, 14 Cal. 396; *Bird* v. *Brown*, 4 Exch. 786, 799; *Galle* v. *Tode*, 148 N. Y. 270, 280). The defendant was not at fault when he failed to make his monthly payments of alimony from August 16, 1924, the date of the second marriage, to August 17, 1927, the date of the annulment. If the plaintiff had been unwilling to take advantage of the fraud, the second marriage might have continued while the parties to it were alive. The defendant could not know that it would ever be annulled, still less the time or cause. During all the years that it continued, or at least till action was begun, the second husband was chargeable with a duty of suitable support. There is a presumption, if nothing more, that the duty was fulfilled (*Cohen* v. *Cohen*, 150 Cal. 99; *Phy* v. *Phy*, 116 Ore. 31; *Nelson* v. *Nelson*, 282 Mo. 412). To say that the judgment of annulment has put the defendant in default through the fiction of relation is to say that the plaintiff shall have support or an equivalent from each of two men during the same period of time, and this by force of a fiction subservient to justice. Analogies of legal doctrine all point the other way (Civ. Prac. Act, § 1159; *Krauss* v. *Krauss*, 127 App. Div. 740; *Nelson* v. *Nelson, supra; Cohen* v. *Cohen, supra; Phy* v. *Phy, supra; Albee* v. *Wyman*, 10 Gray, 222; *Sistare* v. *Sistare*, 218 U. S. 1, 22).

The question in its last analysis is one as to the construction and effect of the judgment of the Nevada court. The defendant's duty is what that judgment made it and no more. The judgment, following the agreement, charged him with a duty which arose month by month, if it ever arose at all. Default there was none unless also default that was immediate. The meaning, as we

view it, is not uncertain, but uncertainty, if any, must be so resolved that form shall be adapted and made subordinate to purpose. The purpose of an award of alimony is support for a divorced wife not otherwise supported. This purpose is perverted by imputing a dual obligation. In the case at hand, the wife might have waited to annul the marriage to her second husband till the first was in his grave. If that had been her choice, we cannot bring ourselves to believe that she could have recovered from his estate the installments accruing during life on the theory that by the fiction of relation he had been in default from the beginning. The test must be the same, however, whether the suit for installments overdue is brought during life or postponed till after death (*Van Ness* v. *Ransom*, 215 N. Y. 557). We think a fair construction of the decree, in the light of the words to be interpreted and the purpose to be served, fits the duty month by month to the situation then existing, and declines to aggravate it later for defaults innocent when suffered. The duty is personal, and personal, not vicarious, is the wrong to be redressed.

We find no basis for a ruling that the decree of annulment is void for defect of jurisdiction. True, when it was rendered a marriage voidable for insanity was not subject to annulment at the suit of the sane spouse (*Hoadley* v. *Hoadley*, 244 N. Y. 424), a rule now changed by statute (Civ. Prac. Act, § 1137, as amd. by L. 1928, ch. 83). This does not mean, however, that a false representation as to sanity could never in any circumstances give ground for such a suit, though made in a lucid interval and with fraudulent intent. Fraud is an accepted basis for the annulment of a marriage. The phases of fraud are manifold. We are not concerned at the moment to enumerate or limit them. There may or may not be error in a decree of annulment built on such a basis. There is no defect of jurisdiction appearing on its face. The decree must prevail against collateral attack.

The judgment of the Appellate Division should be reversed and the order of the Special Term affirmed with costs in the Appellate Division and in this court.

KELLOGG, J. (concurring in result). This is a motion made by the defendant, formerly the husband of the plaintiff, for a judgment on the pleadings, in an action brought by the plaintiff to recover unpaid installments of alimony, directed to be paid to her by a final decree in an action for divorce.

For the purpose of the motion the following facts, asserted in the pleadings, may be regarded as true: The parties to the action were married in the State of New York on the 27th day of July, 1908. On the 2d day of April, 1923, they separated by mutual consent and have ever since lived apart. At the time of the separation they entered into an agreement, in writing, whereby the defendant engaged himself to pay to the plaintiff the sum of $400 monthly until June, 1924, and thereafter the sum of $350 monthly. It was agreed that, if the plaintiff should procure a divorce in any action subsequently brought, the contract provisions for monthly payments to the plaintiff, " to continue so long as she remained unmarried," should be incorporated in the decree which might be granted. On the 26th day of October, 1923, the plaintiff obtained a decree of absolute divorce in a court of competent jurisdiction in the State of Nevada. The decree provided that the defendant should thereafter pay alimony to the plaintiff in monthly installments as provided in the agreement between the parties. On the 16th day of August, 1924, a ceremonial marriage between the plaintiff and Howard E. Hannum was performed. On the 17th day of August, 1927, this marriage was annulled, at the suit of this plaintiff, by a judgment of the Supreme Court of this State. The grounds of the annulment were that Howard E. Hannum had fraudulently concealed from the plaintiff that " he was insane

prior to, up to and including the time of said marriage." Alimony had been paid by the defendant to the plaintiff until August, 1924. Since August 16th, 1924, the day of the plaintiff's marriage to Hannum, no installment of alimony has been paid. Upon these facts arises the question: Did the defendant pay alimony to the plaintiff " so long as she remained unmarried? "

A marriage may be annulled on the ground that it was induced by fraud, where one party, having knowledge that he was afflicted with a venereal disease, had concealed the fact from the other party. (*Svenson* v. *Svenson*, 178 N. Y. 54.) That it may be annulled for the fraudulent concealment by one party of the fact that he has been a sufferer from epilepsy has been held. (*Lapides* v. *Lapides*, 224 App. Div. 257.) We conceive that the fraudulent concealment of a serious disorder, which is mental rather than physical, may likewise constitute an adequate ground for annulment. A person afflicted with insane delusions may be guilty of an intentional and deliberate homicide. (*People* v. *Ferraro*, 161 N. Y. 365.) Equally well must there be instances where an insane person is capable of committing a fraud. We must assume that, in annulling the marriage between the plaintiff and Howard E. Hannum, the Supreme Court of this State had before it such an instance. As the court may have acted with jurisdiction, in determining that the marriage was induced by the fraudulent concealment, by Hannum, of the fact that he was then insane, its decree of annulment is not now open to collateral attack. The case of *Hoadley* v. *Hoadley* (244 N. Y. 424) can afford no comfort to the defendant. It was there held that an annulment on the ground of *insanity* could not be granted at the suit of the spouse who is sane; not that the sane party to a marriage would be denied annulment for a fraud committed by the insane party which induced the marriage.

Although the marriage between the plaintiff and

Hannum originally may have been voidable, rather than void, it became, when the decree of annulment was pronounced, absolutely void from its very inception. (*Collins* v. *Collins*, 71 N. Y. 269; *Price* v. *Price*, 124 N. Y. 589; *Jones* v. *Brinsmade*, 183 N. Y. 258; *Matter of Moncrief*, 235 N. Y. 390.) In *Jones* v. *Brinsmade* (*supra*) it was held that, pending the determination of an action for an annulment, brought by a wife against her husband, no alimony might be granted to the wife. The theory of the decision was that the wife was seeking a decree which, if granted, would relate back to extinguish, from the very inception of the marriage, every duty of maintenance owed to her by the putative husband; that the wife could not consistently claim alimony while pressing for a decree the granting of which would negative the existence of an obligation of support. Judge CULLEN, in writing the opinion of the court, quoted with approval from Bishop on Marriage and Divorce, section 118, as follows: " The doctrine may have a limit under the operation of a statute, but it appears to be universal under the unwritten law, that, when a voidable marriage has been set aside by a decree of nullity, the parties are regarded as having never been married." In *Matter of Moncrief* (*supra*) it was held that, under chapter 531 of the Laws of 1895, which provided that all children born out of wedlock, whose parents subsequently married, should be deemed legitimate, such a child was not saved from illegitimacy by a voidable marriage between its parents which was subsequently annulled. In retrospect, Howard E. Hannum, after the annulment of the marriage, was never obligated to furnish support to the plaintiff, for the two had never been married. If, in regard to procuring support from Hannum, the plaintiff may be deemed to have remained unmarried, it must clearly follow that, in respect to obtaining alimony from her former husband, under a decree providing for its payment by him " so long as she remained unmarried,"

she must likewise be regarded as a woman who had "remained unmarried." For these reasons, upon the assumption that the facts set up in the pleadings are true, the defendant is obligated to pay to the plaintiff the installments of alimony which have fallen due between August 16th, 1924, and the present day.

POUND, CRANE, LEHMAN and HUBBS, JJ., concur with CARDOZO, Ch. J.; KELLOGG, J., concurs in result in separate opinion in which O'BRIEN, J., concurs.

Judgment accordingly.