Maurice Wahl, J.
Plaintiff, defendant’s former wife, brings this action to recover $750 allegedly dne her from defendant, her former husband, representing installment payments for the period from November 1, 1954 to May 23, 1955, a period of 30 weeks, at $25 per week, under the provisions of a written separation agreement between the parties dated November 25, 1949, reading:
“3. (a) From the date hereof until November 1, 1954, the Husband agrees to pay to the Wife as and for her support and maintenance, the sum of Fifteen ($15) Dollars per week, said payments to continue each and every week until November 1, 1954, or until her death, if said death will occur sooner.
*2 “ (b) From November 1, 1954 and until the Wife’s death or remarriage, the husband agrees to pay to the Wife, as and for her support and maintenance the sum of Twenty-five ($25.00) Dollars per week; in the event of the Wife’s remarriage or death, then and in that event all payments due hereunder to the said Wife for her support and maintenance shall cease and terminate. ’ ’
The agreement also made provision for the support and maintenance of the two infant children. However, this portion of the separation agreement is not in issue.
The parties were married in the city and State of New York on August 15, 1940, and eventually, by final decree of divorce granted on or about June 30,1950 in the Eleventh Circuit Court of Florida, Dade County, they were divorced and the agreement above referred to was approved and incorporated in the decree.
Subsequent to the divorce, and on or about March 28, 1951, plaintiff married one Lerman. That marriage was annulled by judgment of the Supreme Court of the State of New York, County of New York, on or about November 24, 1952, and the annulment judgment became final on February 24,1953. Defendant has made no payments to plaintiff for her support and maintenance, in accordance with the above provisions of the agreement, since on or about November 1,1954.
Defendant counterclaims for the sum of $2,775, on the theory that plaintiff received this sum of money from the defendant during the period plaintiff was married to Lerman, during which period of marriage defendant contends that plaintiff was not entitled to any support and maintenance.
The marital status of the parties is not only governed by their agreements but by the law of this State as well as the public policy of this State. (Civ. Prac. Act, § 1172-c.)
The theory of the law and its ultimate objective is to provide support and maintenance for a spouse in accordance with the husband’s ability and station in life of the parties during their marital status. At least in this forum it is a matter of public policy that a spouse may only seek support in the absence of any valid and subsisting agreement to the contrary which would survive a severance of the marital ties from her lawful spouse. The law does not countenance support for a spouse from two persons, each of whom, so far as the economic status is concerned, may be deemed in the category of “ husbands ”.
This public policy was carried so far into effect as to create the doctrine of ‘ ‘ relation back ’ ’ (Sleicher v. Sleicher, 251 N. Y. 366).
*3 Since that determination, however, section 1140-a of the Civil Practice Act was enacted, which provides that in an action for annulment of a marriage or to declare the nullity of a void marriage, the court may give directions for the support of a wife by the husband to that marriage as justice requires.
Plaintiff’s marriage to Lerman was annulled for the latter’s fraud, to which this defendant was a stranger. It is not clear from the record whether plaintiff’s marriage to Lerman was void or voidable, but as the court views the law, that is immaterial. Defendant had the right to assume that upon plaintiff’s remarriage to Lerman, such remarriage was valid, and that another man had accepted the responsibility for the support of defendant’s former wife. Whether the remarriage was partially induced by some reliance upon the financial responsibility of this defendant as expressed by the separation agreement between the parties hereto, is not before the court, and indeed, in the court’s opinion, has no relevancy upon the issue.
The doctrine of " relation back ”, as expressed in Sleicher v. Sleicher {supra) has been entirely abrogated by virtue of the legislative enactment (Civ. Prac. Act, § 1140-a), and the determination in Gaines v. Jacobsen (308 N. Y. 218, 223) where, among other things, it is said:
“ Since the function of alimony payments is to provide support for a wife not otherwise supported, the reason for such payments fails when the wife acquires a new source of support by remarrying * * *
“ The subsequent fortunes of the remarriage, and whether or no it is later terminated, are in no way material to the agreement; the husband’s obligations are by its terms to continue only until she remarries, and there is nothing in the agreement which can serve as a basis for subsequently reviving those obligations.”
It is true that the word “ remarriage ” is omitted physically from the provisions of paragraph “ 3.(a) ” of the separation agreement made November 25, 1949 by the parties hereto. Admittedly, the aforesaid agreement could have been more precise in its terminology. Nevertheless, in the court’s opinion, not only the provisions of law but the public policy of the State are inherent parts of and are read into any agreement made in this forum. It is a fact that, upon proof of a wife’s remarriage, the court must modify the judgment by deleting the provisions for the wife’s support.
It appears to this court that public policy would abhor a spouse being legally married to one who is obligated by law *4 to support her, and the same spouse being likewise supported by a former husband.
The enactment of section 1140-a of the Civil Practice Act was, in the court’s opinion, a legislative pronouncement to cure a situation whereby an innocent party of a former marriage would always be at the peril of his former spouse, even though he may be innocent and a stranger to such remarriage and all that it may encompass, and on the strength of such remarriage himself remarry, and then thus find that he is saddled with a revived obligation.
Plaintiff wife having remarried, must be held to have looked exclusively to her new husband Lerman for whatever support and maintenance she was entitled to. She could not, by that fact, ‘ ‘ lay the financial ■ and economic provision of the separation at repose ”, for the “ duration of the new marriage and if the remarriage were unsuccessful for any reason whatsoever or were otherwise abrogated, to then bring out of the mothballs and revive the agreement to support a former wife.
It must not be overlooked that in the instant case the parties’ marital status was abrogated by a decree of divorce, and no one could validly claim that the instant agreement would be revived if the plaintiff’s remarriage had ended in a divorce rather than in an annulment. As was said in Gaines v. Jacobsen (supra, p. 225) the economic status and the doctrine of “ relation back ” is changed because, “ By writing section 1140-a into the law, the legislature has chosen, without regard to whether the marriage is void or voidable, to attach to annulled marriages sufficient validity and significance to support an award of alimony, in other words, to serve, the same as any valid marriage would, as the foundation of a continuing duty to support the wife after the marriage is terminated.”
Following the decision in Gaines v. Jacobsen (supra) Mr. Justice Frank, writing for the Supreme Court, and now of the Appellate Division of this department, in Gevis v. Gevis (141 N. Y. S. 2d 121) in passing on an analogous problem, said: “ Whether the obligation to support be based upon an agreement or on a judgment of divorce, it must be deemed terminated and the defendant is released from his duty to support the wife.”
In the Gevis case, the agreement of separation specifically recited that no decree of divorce was to affect it or any of its terms in any way. The court deems this to be comparable to the omission, in contemplation of law, of the word “ remarriage ” from paragraph “3. (a) ” of the instant separation agreement. (Davis v. Webber, 278 App. Div. 36.)
*5 The court is, therefore, constrained to construe the instant agreement to the effect that the plaintiff’s remarriage, later annulled, terminated defendant’s obligation; and that the annulment of the remarriage, whether it was a void or voidable marriage, could not ‘ ‘ breathe life into the extinguished agreement ”, and thus revive it, because in the words of the Gaines case {supra, p. 226): “ Having remarried, she chose to abandon her right to support from defendant in favor of Harragan. Plaintiff could not retain both husbands as sources of support ; having made her choice, she is bound by it, although subsequent events prove it to have been an improvident one.”
The decision in Schaeffer v. Schaeffer (3 Misc 2d 1085) in nowise affects this cause, because all the court there decided was that the husband, who was the party to the annulment suit, was liable to his former spouse after the judgment of annulment by virtue of the provisions of section 1140-a of the Civil Practice Act. That case is obviously distinguishable from the facts in the case at bar, and, indeed, reaffirms the rule enunciated in the Gaines case.
Nor does the more recent decision in Matter of Sylvester (Gluck) (2 N Y 2d 808) aid the plaintiff herein, for there the court held that continued payments of trust income to the wife, despite her marriage, was not contrary to public policy since the trust agreement expressly envisioned the possibility that the wife would remarry.
Here, the first husband’s duty to support the wife ceased on her remarriage — or death — and his duty was not revived when the second marriage was annulled. This principle of law finds its strength in sections 1140-a and 1172-c of the Civil Practice Act and the cases decided thereunder.
The complaint is, therefore, dismissed. Insofar as the counterclaim is concerned, it is well settled that the moneys paid by way of alimony under the facts as shown in this case, cannot be recouped. Therefore, the counterclaim is also dismissed.
Let the clerk enter judgment accordingly, dismissing the complaint and the counterclaim on the merits.