Keating, J. (dissenting).
The plaintiff seeks a declaration that he is no longer bound to support his former wife pursuant to the terms of a separation agreement, and that she must relinquish her rights as beneficiary of certain life insurance policies pursuant to the same agreement, on the ground that his obligations continued only “ so long as she [did] not remarry ”.
The wife—who eoncededly took part in a subsequent ceremonial marriage — argues that since that marriage was absolutely void, and declared to be so in New Jersey, she was never remarried and is entitled to continue receiving support under the agreement from her former spouse.
That is the substance of the respective contentions, but for convenience, these further facts are set forth.
The separation agreement was made in May, 1961. Later in the same month, plaintiff obtained a Mexican divorce from defendant.
Two weeks thereafter, plaintiff married his next-door neighbor, herself the recent recipient of a divorce.
In January, 1964 defendant married one Seymour Frischman, who also held a Mexican decree of divorce. Frischman, however, was either less careful or less fortunate, or both. In July, 1964, his “former” wife, incidentally the plaintiff’s sister, obtained a decree in the New Jersey Supreme Court declaring his Mexican divorce from her invalid and of no effect. Thereafter, Frischman was convicted of bigamy. Although not a *780 party to any of these proceedings, defendant, of course, found herself unmarried to Frischman and financially spurned by plaintiff.
This same problem has been here before, but with one significant difference. In Sleicher v. Sleicher (251 N. Y. 366), on the same facts, we held that the husband’s obligations were revived after judicial annulment of the purported remarriage.
Subsequently, in Gaines v. Jacobsen (308 N. Y. 218), again on the same facts, we held that the husband’s duties were not revived.
The different result was accounted for by a change in the statutory law. In the period between the Sleicher and Gaines decisions (supra), New York adopted section 1140-a of the Civil Practice Act (now Domestic Relations Law, § 236) which permits the court in an annulment action to “ direct the husband to provide suitably for the support of the wife ”. Thus, we said in Gaines: " Today, through the operation of section 1140-a, the wife can receive support from the husband of the annulled marriage, where ' justice requires, ’ and there is no more reason to revive the obligation of the first husband — a stranger to the annulment—than there would be if the marriage were terminated by divorce.” (308 N. Y. 218, 224.)
The present case is Sleicher all over again, with the added fact that we now have section 236 of the Domestic Relations Law and the Gaines decision, though neither is of any avail whatever to the plaintiff—unless Gaines overruled Sleicher rather than merely distinguished it. The majority now holds that Gaines did overrule Sleicher, and it is with that conclusion that I disagree.
In New Jersey, where Frischman’s marriage to defendant was declared a nullity, and where Frischman and the defendant now reside, there is no statutory equivalent to section 236 of the Domestic. Relations Law, and the defendant cannot obtain support from Frischman. (Minder v. Minder, 83 N. J. Super. 159 [1964].). In short, the New Jersey law is the same as our law was at the time Sleicher was decided, and we are again presented with a Sleicher situation.
The question is whether Gaines mandates a different result, despite the fact that its rationale falls in the absence of an appropriate statute. I think it does not.
*781 Special Term held that Gaines did not apply in the circumstances and denied summary judgment. The Appellate Division, on the other hand, gave Gaines a broad interpretation, held that it did apply, reversed Special Term, and granted plaintiff’s motion for summary judgment.
In the final analysis, we are required to determine whether, as a matter of policy, greater emphasis should be placed on the wife’s right to assured support from her former husband, or whether it is preferable to allow the husband, once apparently free of the support obligation, to remain free of that obligation forever.
We have already made it quite clear that the answer does not turn on whether the wife’s “ remarriage ” is void, or merely voidable. In Sleicher, the remarriage was voidable on the ground of fraud (concealing insanity) and we reinstated the alimony payments. In Gaines, the ‘ ‘ remarriage ’ ’ was void absolutely (husband had a wife still living) and we refused reinstatement. In each case, however, once judicially declared, the marriage is a nullity ab initio, and support, if reinstated, is reinstated only from and after the judicial declaration of nullity. In no case can a wife receive support from two “husbands ”.
We have also made it clear, I think, that we are doing more than merely construing the separation agreement (i.e., when the parties agree to support terms so long as the wife does not remarry, do they mean a valid remarriage, or will a mere ceremonial remarriage suffice?). The agreements in Sleicher (“so long as she remains unmarried ”) and in Gaines (“ until she shall remarry ”) say the same things but, as influenced by our own policy considerations, we reached different results.
Finally, I think it is clear nothing is gained by narrow adherence to the doctrine that an annulled marriage, vis-a-vis a divorce, relates back, wipes the slate clean, and in contemplation of law never existed. That analysis would lead to the result which I am urging, but in truth, as we pointed out in both Gaines and Sleicher, it is merely an equitable doctrine employed to achieve desirable results and discarded to avoid inequitable results. (See, also, Sefton v. Sefton, 45 Cal. 2d 872.) It describes more the result arrived at than the rationale supporting it.
There are strong arguments to be made for both sides.
*782 New Jersey, Illinois, and Kansas apparently take the position that an invalid remarriage is ineffective to destroy the wife’s rights under a prior agreement. Although they do so by pointing out either that such remarriages are void (as opposed to voidable) or that such marriages create no rights, duties, or obligations between the annulled parties (because they relate back and “never existed”), they do point out that the result reached is reasonable since “ remarriage ” is significant only because it replaces the former source of support and provides a new source of support for the wife. (See Minder v. Minder, supra; Sutton v. Leib, 199 F. 2d 163 [7th Cir., 1952]; Johnson County Nat. Bank & Trust Co. v. Bach, 189 Kan. 291.) And as we pointed out in Sleicher (supra, p. 371), “ The purpose of an award of alimony is support for a divorced wife not otherwise supported. ”
On the other hand, Massachusetts has taken the position that the wife’s ‘ ‘ remarriage ’ ’ ceremony alone, though void, is sufficient to satisfy the condition of support “ until remarriage ” in the contract. That conclusion is urged by the argument that the husband is entitled to rely on “ the appearance of things ” and that he need not act at his own peril in ‘ ‘ ordering his own affairs in reliance on appearances ” where he has no reasonable means of discovering the true circumstances. (Gerrig v. Sneirson, 344 Mass. 518, 521.)
California takes the similar view that knowledge of voidability is not imputable to the husband, that the husband should be able to recommit his assets based on appearances, and that, as between two innocent parties, the law looks less favorably on the more active of the two, i.e., the remarrying wife (Sefton v. Sefton, supra).
I would only point out that insofar as knowledge, appearances, and ability to recommit assets are related to the present case, plaintiff husband was the first to remarry, and thus at least partially to recommit his assets, and that he instigated the New Jersey proceeding so there can be no doubt of “ appearances ” or of his actual knowledge. I would note also, however, that we decided the Gaines case fully aware of the fact that the wife’s “ annulled ” husband had died after commencement of the litigation, .so that support, notwithstanding section 1140-a of the Civil Practice Act, would not be forthcoming.
Upon balance, it seems to me that when the rationale underlying Gaines is unavailable, Sleicher presents the governing law *783 and that it accurately reflects the preferable rule in New York where section 236 of the Domestic Relations Law is not applicable.
The order of the Appellate Division should be reversed and the order of Special Term should be reinstated.
Order affirmed, etc.