DuPuy Trust

Before Zavarella, A.J., Ross and Boyle, JJ.

OPINION BY ZAVARELLA, A.J., JUNE 7, 1979:

As stated in a prior en banc decision of this court, John and Alma DuPuy, in contemplation of a divorce action, entered into a trust agreement January 11, 1954. Under paragraph 4 of the agreement John DuPuy was to place $50,000 in trust with the income to be paid by the trustee to Alma DuPuy for life or until her remarriage. Upon Alma DuPuy's death or remarriage, the trust was to be terminated and the

balance of the trust principal returned to John DuPuy. Paragraph 16 of the agreement provided that in either event, termination was conditioned on the filing with the trustee of a "duly authenticated copy of a public record showing the death or remarriage of the wife."

The parties were divorced May 4, 1954, and from that time Alma DuPuy received payments from the trustee in accordance with the trust agreement. In March, 1976, however, the trustee suspended payments upon being notified that Alma DuPuy had filed, in a Florida proceeding, an election to take dower as the common law wife of one Ben Marden, deceased. The trustee then filed a supplemental account and a petition for distribution requesting a judicial determination as to whether the trust should be terminated or continued in accordance with its terms.

Following a hearing before this court a decree of distribution was entered. The decree in relevant part read:

> "The above funds are to be held by the trustee for further administration and accounting with the direction that income payments to Alma DuPuy be suspended pending ultimate determination by the Florida Courts as to whether Alma DuPuy has remarried. If it is determined that Alma DuPuy has not remarried then this court will determine if the provisions of paragraph 16 of the trust bequest have been satisfied."

This decree was later affirmed by the court en banc which further stated that if the Florida court determines no marriage, we will recognize that adjudication but will not, without further proceedings, recognize the right of Alma DuPuy to continue to receive income property.

The litigation in Florida now having been concluded by a final adjudication that no marriage existed, the matter is now before this court upon a petition to terminate the trust and return principal and income to John DuPuy.

The initial question to be decided is whether the payments to Alma DuPuy should be terminated on the basis that she maintained in prior litigation that a common-law marriage had been entered into between herself and Ben Marden. Counsel for John DuPuy argues that the alleged common-law marriage and Alma DuPuy's sworn statements in support thereof constitute an event of termination, and that she is judicially

estopped from asserting the position she was not married to Ben Marden. Counsel for Alma DuPuy argues that as a legal determination, remarriage was a condition precedent to the termination of payments under the trust agreement and that Alma DuPuy's opinion and conclusions on the legal question of her marital status are without effect. Moreover, it is argued a reasonable reading of the trust agreement indicates that the intent of the parties was for termination to occur if and when Alma DuPuy remarried, not when she subjectively believed that the marital status had changed. This intent is evidenced by paragraph 16 of the agreement which expressly conditioned the termination of payments upon receipt by the trustee of a duly authenticated copy of a public record. showing remarriage. Moreover, paragraph 11 provided that the trust cannot be modified without the written consent of both parties. The primary purpose of the trust was to provide for the support and welfare of Alma DuPuy during the period she was alive and unmarried.

As to this, counsel for John DuPuy argues the payments should be terminated on the ground that Alma DuPuy assumed a position in former litigation inconsistent with that now being taken. She is playing fast and loose with the courts: *Scarana v. Central R. Co. of New Jersey*, 203 F2d 510 (3rd Cir. 1953).

One thing is clear in this case, Alma DuPuy cannot come into this court and assert that she never remarried or never made allegations under oath that she was married. The trial in the Florida courts lasted 21 days and as indicated, consisted of testimony which was in hopeless conflict and contained some 320 exhibits relating to the alleged marriage. The trial court found, as a matter of law, that there was evidence of a matrimonial relationship and a presumption of a valid marriage. It was further found, however, that this presumption was rebutted by proof that there was no agreement to contract a common-law marriage. On appeal the appellate court, after discussing the matter of probate of estates, indicated that while a surviving spouse is not required to have her marriage license in hand to be a surviving spouse, nevertheless it agreed that from the totality of the evidence no marriage ever existed.

This is not to say, however, that the conclusion reached by

the appellate court in Florida is definitely determinative of the right of Alma DuPuy to continue to receive income payments. Her argument that there is no public record of a remarriage and that there is a difference between remarrying and thereby abandoning rights of support under a trust agreement and making allegations of remarriage is not persuasive in this court. Rather than to find that the plain language of the trust agreement makes her election to seek support elsewhere insufficient to terminate the trust, it is more reasonable and just to find that the provision requiring a duly authenticated copy of a public record showing a remarriage was inserted for the benefit of the trustee rather than to continue income payments to a person who has filed pleadings under oath and likewise testified that she had indeed remarried.

This is a difficult case. The Florida appellate court characterized the marriage question in a nutshell by saying "that's what this litigation is all about." Likewise in a nutshell that is what this litigation is all about, that is, Alma DuPuy elected to take her chances by maintaining her marriage and she is bound by the results thereof, both in Florida and Pennsylvania.

OPINION FOR COURT EN BANC BY ROSS, J., OCT. 22, 1979:

This matter is before the court on exceptions filed by Alma DuPuy to an opinion and order entered June 7, 1979, wherein the court entered termination of a trust from which Alma DuPuy received income with a distribution of the balance of the trust to John DuPuy the settlor-remainderman. The exceptant objects to various findings of fact and law implicit in the court's opinion. The basic issue before the court is whether it was proper to grant the petition of John DuPuy for trust termination on the ground that an event requiring termination under the trust agreement exists because by a public document Alma DuPuy swore under oath in a Florida court proceeding she was the common law widow of Ben Marden and entitled to share in his estate and because an equitable estoppel bars her from claiming rights under the current trust.

The facts of this case are simple. On or about January 11, 1954, in contemplation of a divorce action, husband and wife John and Alma DuPuy entered into a trust agreement under

which John DuPuy was required to transfer to the then-trustee Fidelity Trust Company $50,000 from which income was to be paid by the trustee to Alma DuPuy for life or until her remarriage. Upon her death or remarriage trust principal was to be returned to John DuPuy. Paragraph 16 of the agreement provided that prior to termination by the trustee based upon either event "a duly authenticated copy of a public record showing the death or remarriage of the wife" was to be filed with the trustee as evidence of the occurrence. The agreement recites that the husband had deserted his wife.

From May 4, 1954, when the parties were divorced until March, 1976, the trustee (which by succession is now Pittsburgh National Bank) pursuant to the agreement paid trust income to Alma DuPuy. In March, 1976, the trustee suspended payments because of then-pending legal proceedings in Florida where Alma DuPuy was attempting to take against the will of Ben Marden on the ground that he had been her common law husband. It filed an account May 11, 1976, a supplemental account on August 30, 1976, and a subsequent petition for distribution asking the court to determine whether Alma DuPuy was the wife of Mr. Marden, whether, pending resolution of that question, she was entitled to further trust income, whether paragraph 16 had been complied with and whether the trust should be terminated. The court March 2, 1977, suspended the balance until the Florida court could determine the marriage issue. The order of March 2, 1977, stated if it were determined in Florida that Alma DuPuy had not re-married this court would determine whether or not to apply the provisions of paragraph 16. In July 1978, the decision of the Florida trial court that no common law marriage existed was affirmed when the Supreme Court of Florida denied certiorari from the sustaining of the lower court decision by the Florida Court of Appeal. The courts of Florida determined that the evidence was insufficient to support a finding of a common law marriage between Alma DuPuy and Ben Marden and thus that no such marriage existed.

Despite the final decision of the Florida courts, John DuPuy has petitioned to terminate the trust asserting that Alma DuPuy maintained in the Florida litigation that she was the common law wife of Ben Marden, that her sworn state-

26

ments as a public document constitute an event of termination and that she is judicially estopped from now asserting she was not the wife of Ben Marden.

Alma DuPuy on the other hand argues that under paragraph 16 termination of the trust must be predicated upon other documentary evidence of her legal remarriage. She agrees that had the Florida courts determined the existence of a marriage to Marden the trust should have been terminated but asserts that her statements and allegations made in pleadings in the Florida proceeding where she was unsuccessful are of no effect in this court and do not provide a basis for termination. She further asserts the requisite elements for the invocation of judicial estoppel are not present.

The position of Mrs. DuPuy would seem valid.

The language of the trust agreement is plain and straightforward. It provides that the trustee be presented with legal documentation of death or remarriage prior to termination. This provision was not inserted merely for the benefit of the trustee but rather, viewing the agreement in light of the circumstances surrounding the parties at the time the trust was created, it appears clear that the provision was inserted for the benefit of the income beneficiary. In January of 1954, John and Alma DuPuy were contemplating a divorce which was finally effected in May, 1954, subsequent to the execution of the trust agreement. Pennsylvania is one of the few jurisdictions in the United States barring support or alimony for either spouse subsequent to an absolute divorce. The trust instrument was executed as a guarantee of some financial support to Alma DuPuy subsequent to divorce which was to terminate only upon her death or upon her remarriage. If Alma DuPuy was legally remarried, the obligation of spousal support would not be present and the need for which the trust was established would be extinguished. However, if Alma DuPuy was not legally remarried, despite the existence of any relationship which she might have been involved, she has not acquired a legal status entitling her to support and maintenance as a result of the other relationship and the event requiring termination has not occurred. The question of a *legally recognized* marriage then is crucial to a determination whether or not to terminate the trust, as evidenced by the

plain language of the agreement giving effect to the intention of the parties. The husband would be entitled to be absolved from his contractual obligation to support if his former wife's new legal status entitled her to look elsewhere for support.

A similar issue has arisen in other jurisdictions usually involving a situation where the income beneficiary remarries, only to learn that her new spouse was still married to another, in which case her marriage (depending on the jurisdiction) would be void or voidable and subsequently annulled.

In *Johnson County National Bank and Trust Company v. Bach*, 369 P.2d 231, 236, the Kansas court was faced with a similar question as it pertains to annulment. The court noted:

> "The primary purpose of the trust, as we construe the trust instrument, was to provide for the support and welfare of the immediate beneficiary . . . If there was to be an alteration in the primary purpose by making a reduction in the income payments to Mrs. Bach in the event of her remarriage, it was the intention of the parties to substitute another source of income for her support instead. This would be accomplished only by a *valid* marriage, one which gives rise to marriage status."

The posture of similar questions in New York promotes such a philosophy. In *Sleicher v. Sleicher*, 251 N.Y. 336, 167 N.E. 501, the New York court held the husband's obligations were revived after judicial annulment of the former wife's purported remarriage. In *Gaines v. Jacobsen*, 308 N.Y. 218, 124 N.E. 2d 290, the same New York court held such duties were not revived. The basis, however, for the *Gaines* case deserves discussion. Between the two decisions, the state of New York promulgated a statute that provided for the payment of alimony subsequent to an annulment, because since alimony after annulment was now available to the former spouse, the initial purpose of the trust to provide such support no longer existed even though the remarriage became void.

While the decisions in various jurisdictions diverge in their results, there is a general recognition of the importance of intent as expressed in the trust agreement. This court should adopt the better policy advanced by New Jersey, Illinois and Kansas, and New York prior to its provision for alimony after annulment. The recognition of the agreement as a means of income protection for a spouse (here the wife) and the grant of termination only where a new legal status places such

obligation elsewhere serve the ends of justice, particularly in a state such as Pennsylvania where alimony after absolute divorce has never been a legal claim. The trust agreement is executed to provide what the statutory law has neglected to insure. Experience in the area of domestic relations law reveals the need to bargain with respect to the economic insecurity that occurs when parties separate and eventually divorce. Generally, the economic well-being gained in circumstances similar to the present one is central to the agreement. To negate the exceptant's right to income would violate the basic reason for the agreement and leave her without the financial security intended by the parties. The ends of justice would not be served by a termination of the trust on the ground Mrs. DuPuy unsuccessfully tried to prove a marriage to Mr. Marden.

John DuPuy asserts that exceptant is playing fast and loose with this court because of her inconsistent Florida proceeding: *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Circuit). In the Florida proceeding Alma DuPuy made seven allegations of fact. The Florida court determined those facts to be insufficient to support a legal conclusion of marriage to Ben Marden. Had Alma DuPuy been successful she would have acquired a new status and thereby gained spousal rights in Marden's estate by judicial fiat, the kind of legal documentation sufficient to terminate the trust under the agreement. She was unsuccessful. An event of termination did not occur and she rightfully opposes termination of the trust at this time. Her pleading of facts is not legally conclusive of anything and cannot be legal documentation.

The equitable doctrine of estoppel asserted requires the existence of several elements before a party may successfully raise such doctrine: he must have been misled by the acts of conduct of the other party; he must have changed his position in reliance on such acts; he must have been justified in changing his position and he must have been prejudiced or a benefit must have accrued to the party against whom the estoppel is claimed: 31 *C.J.S.*, Estoppel §108, pp. 555-557. This court has viewed no evidence of changed position by the remainderman to his detriment that would allow the finding of the estoppel elements in the instant case.

"Statements in pleadings in a former suit which are merely assertions of conclusions of law or assertions of opinions do not create an estoppel, particularly where such conclusions or opinions have been unsuccessfully pleaded" : 31 *C.J.S.*, Estoppel, §121, p. 648. Equity does not mandate that the unsuccessful assertion of a fact or opinion should operate as a bar to a later assertion of a contrary fact or opinion. This would be particularly inequitable in a case such as this where valid reasons exist for the requirement of legal documentation of death or remarriage. This case is devoid of any suggestion of a change of position on the part of John DuPuy in reasonable reliance on exceptant's Florida pleading and no prejudice or injury to him. If anything, the failure of the Florida courts to decide in favor of Alma DuPuy merely preserved the status quo. No injury has been suffered by John DuPuy if the trust continues. If the trust is terminated, injury results to Alma DuPuy because she has no redress either in Florida as the widow of Marden or in Pennsylvania as a divorced wife seeking alimony not allowed by the law.

For the reasons recited herein, the exceptions of Alma DuPuy should be sustained.