DAVID CHARLES TITSWORTH, by next friend,

*v.*

IDA S. TITSWORTH.

[Decided November 1st, 1910.]

1. Under Divorce act (*P. L. 1907 p. 475 § 1 ¶ 5*) permitting a decree of nullity of marriage at the suit of the husband under the age of eighteen at the time of the marriage, unless the marriage is confirmed by him after reaching such age, a decree of nullity operates practically to render void at the time of its rendition what up to that time was a valid but voidable marriage and amounts to a decree of absolute divorce, and the children of the marriage are legitimate.

2. Where a husband sues to annul a marriage under Divorce act (*P. L. 1907 p. 475 § 1 ¶ 5*) permitting a decree of nullity of marriage at the suit of the husband under the age of eighteen at the time of the marriage, a decree of nullity will not be based on the testimony of interested witnesses without the production of any record establishing petitioner's age, in the absence of evidence showing that no such record exists.

On petition for decree of nullity of marriage.

*Mr. Charles E. S. Simpson,* for the petitioner.

STEVENSON, V. C.

In this *ex parte* case the master has reported in favor of a decree of nullity under the statute, on the ground that the petitioner was under eighteen years of age when the marriage ceremony was performed. I cannot concur with the learned master in view of the character and extent of the proofs presented to establish the fact that the petitioner was "under the age of eighteen" when the marriage was solemnized and consummated.

The case is brought under the new law which constitutes paragraph 5 of section 1 of the Divorce act of 1907, permitting a decree of nullity

"at the suit of the husband when he was under the age of eighteen at the time of the marriage, unless such marriage be confirmed by him after arriving at such age."

The age of the petitioner at the time of the ceremony is alleged to have been fifteen years and five months; the age of the defendant at the time of the marriage is not shown definitely, but it appears that she was a minor, and the petitioner testifies that he thinks she was about eighteen years of age. It is worthy of note that the clergyman who performed the marriage ceremony accepted the statement of the petitioner that he was twenty-one years of age, although no parents or guardians were present. The clergyman testified to this effect before the master, recognizing the petitioner who was present. Whether or not the defendant knew that the young man, who was undertaking to marry her, and did, in fact, take her as his wife, was incapable of contracting

more than a voidable marriage which he could later on disaffirm if he saw fit to do so, does not appear. So far as the proofs show in this case the young wife may have fully believed that her husband was over eighteen years of age and capable of entering into an absolute and binding marriage with her. The petitioner may have falsely stated to the defendant that he was eighteen years of age, and by this falsehood may have induced her to surrender herself to him. The defendant, who makes no defence, may now be willing to have her marriage annulled.

This new statute of 1907 has certainly made a very radical change in the marriage laws of New Jersey. It is somewhat startling to contemplate from an ethical and sociological point of view the situation created by the statute in this case, and other similar situations which are liable at any time hereafter to arise. This young man, perhaps as mature physically as most adults, without the knowledge of his parents, went with the young woman to whom he was paying attentions to a clergyman's house and undertook by a solemn ceremony of which her brother and sister were witnesses to establish the status of marriage with her. He then lived with his wife at her mother's house for about a month. Apparently getting tired of his partner, he then withdrew from her and shortly after returned to the house of his parents where he has resided ever since. This marriage took place on January 25th, 1910, and whether there may be any issue of the marriage or not does not appear in the proofs. Under our statute, if there be issue, the same will be legitimate, and I think the view is a correct one, that in a case like this a decree of nullity operates practically to render void at the time of its rendition what up to that time was a valid but voidable marriage and thus amounts to a decree of divorce *a vinculo*. Young men under eighteen years of age are thus permitted to contract a "trial marriage," and if the wife be above sixteen years of age, it will be optional with the husband alone to affirm or disaffirm the marriage when he shall reach the age of eighteen years or at any time before.

But while I concur in the views of this sort of legislation indicated by Mr. Bishop (*1 Bish. Mar. & D.* §§ *564, 566*), even when innocent children may not be bastardized, the duty of the court,

of course, is perfectly plain, viz., to enforce this statute in every case fairly brought within it without venturing to "impugn the wisdom or the policy of the law." *Chief-Justice Green, 25 N. J. Law (1 Dutch.) 481.*

I think, however, that where a petitioner in a case like this invokes this statutory remedy which disrupts the marriage relation under the common law and the law of nature, while it leaves his perhaps innocent victim bearing a heavy burden, which may greatly mar her entire life, public policy demands that the case must be clearly proved, and the best evidence of the pre-eminently essential fact must be presented.

In this case the age of the petitioner is proved only by his own testimony so far as he can testify on such a subject, and by the direct and positive oaths of his parents. No physician or midwife, or impartial witness of any kind, is produced to testify in regard to the date of the petitioner's birth, although that event occurred in Jersey City, a physician, whose attendance was procured by the petitioner's father, was present, and the petitioner and his parents have lived in Jersey City or West Hoboken ever since. But the objection which, to my mind, is fatal to the sufficiency of the proofs in this case, arises from the fact that no public record of the petitioner's birth has been proved, and the absence of such evidence has not been accounted for. It seems to me that in all cases under this statute where the petitioner and his parents and intimate friends are liable to be actuated by a strong desire to free the petitioner from an embarrassing matrimonial alliance, the public record establishing the age of the petitioner, if there be one, should be produced. The effects of a decree of nullity in a case like this upon the defendant and upon society, upon the institution of marriage as heretofore recognized by our laws and customs, are too important and far reaching to permit such a decree to be based upon the testimony of interested witnesses when record evidence which, in most cases would be absolutely conclusive, can be obtained. These parents produce no record or documentary evidence, or even a memorandum to aid them in fixing this important date. If the petitioner is mature for his age, the parents might be tempted to merely set back the petitioner's birthday three years. A conviction of perjury

might be very difficult, while the temptation to make a mistake of two or three years in regard to this date might be very great. I am not, however, intimating that the testimony of the parents of the petitioner is to be rejected or to be adjudged inaccurate. The point is that no question as to the accuracy of the memory of parents or their veracity in fixing a date purely from recollection should be raised in a case where disinterested witnesses can probably testify as to the date and the official record of the date can be produced from the proper public office in Jersey City, which record presumably was made within a few days or weeks after the date in question.

It is not so much the date of the birth as stated in the record as the date when the record was made that constitutes the all important item of evidence in a case like this. Of course if it were proved that there is no official public record of the petitioner's birth, that the parents have no family Bible or other contemporaneous memorandum to assist their recollection, that the attending physician could not be produced with or without his private record, and that no reputable neighbors or other persons could be found who would corroborate the parents, a decree of nullity might probably be based on the proofs as they now exist. The fatal defect in the proofs consists in the fact that evidence which presumably exists and is the best and safest evidence is not produced and its absence is not accounted for.

In view of the fact that this case presents at least a novel application of rules of evidence and principles of public policy, and no doubt a difference of opinion may exist in regard to the sufficiency of the proofs which the master has accepted, the petitioner may, if he sees fit to do so, take an order referring the case back to the master for additional proofs. Otherwise, a decree will be advised dismissing the petition.