BERTHA T. STEERMAN, otherwise known as BERTHA SNOW, petitioner,

*v.*

ISAAC SNOW, defendant.

[Decided October 18th, 1922.]

1. The petition for nullity of marriage on the ground of impotence contains two separate causes for action, which are labeled "first count" and "second count," as in common law actions; they should be "first cause for action" and "second cause for action" under chancery rule 59.

2. A marriage may be annulled for impotence under the statute, where there has been discovery only after marriage, or such marriage may be annulled under the inherent jurisdiction of this court relating to fraud; and the fraud may be either *suggestio falsi* or *suppressio veri.*

3. A voidable marriage is treated as valid and binding unless and until its nullity is ascertained and declared by a court of competent jurisdiction in a suit instituted for that purpose by one of the parties during the lifetime of both; but the effect of a decree of nullity, when pronounced, is to render the marriage null and void from the beginning.

On final hearing on master's report and depositions *ex parte.*

*Mr. Joseph B. Perksie,* for the petitioner.

WALKER, CHANCELLOR.

The petition in this case is one for nullity of marriage on the ground of impotence. It contains two separate causes for

action, which are labeled "first count" and "second count,"
as in common law actions.  They should be "first cause of
action" and "second cause of action."  See chancery rule 59.
The first separate cause alleges marriage on March 28th,
1920; that at that time the defendant was physically and in-
curably impotent to consummate the marriage by reason of
the frigidity of his parts of generation or some other physical
cause; that petitioner was ignorant of defendant's impotence
at the time of the marriage and has not subsequently ratified
it; that petitioner and defendant cohabited together from
their marriage until January 21st, 1921, occupying the same
room and bed, but that the marriage was never consummated.
After an allegation of residence the petitioner prays that the
pretended marriage may be decreed to be null and void for
the cause aforesaid, pursuant to the statute, and that the peti-
tioner may have further and other relief.  There is in this
cause of action an averment that prior to the performance of
the ceremony of marriage the defendant falsely represented
to the petitioner that he was in perfect physical health and
condition and that he was able and willing to consummate
the marriage, upon which representations the petitioner re-
lied, but that defendant was then and there impotent to con-
summate the marriage, which was fully known to him.  This
latter is a cause for annulment for fraud inducing the mar-
riage, and this allegation may be stricken out or will be dis-
regarded, leaving the first count to stand as a petition for an-
nulment under the statute.  The second separate cause of
action is founded entirely upon fraudulent representations as
to virility, which were believed by the petitioner, and in reli-
ance upon which she entered in the contract of marriage.
The prayer is for a decree of nullity and for further and
other relief.

Marriage, residence and the impotence of the husband at
the time of the marriage are sufficiently proved.  It is also
proved that he falsely represented himself to be virile and
capable of consummating the marriage.  This is somewhat
extraordinary and arose in this way:  The wife had been
married before and had two children by her first husband.

From her testimony it is clearly to be inferred, although she does not state it in terms, that her first husband became impotent some time after their marriage, and she apparently was fearful that she might encounter the same situation again, and, therefore, made bold to ask the defendant if he were capable, to which he untruthfully replied that he was.

In the case *Anonymous, 24 N. J. Eq. 19,* Chancellor Runyon held that this court will annul a contract of marriage outside of its statutory jurisdiction only where the contract is void; and he refused to annul the marriage for impotence on the part of the husband which existed at the time of marriage, had continued ever since and was incurable, and this for the reason stated by Bishop, whom he quotes—that is, because impotence is a canonical defect which only makes the marriage voidable and not void until sentence of nullity is pronounced, and he stated that whether the application before him be considered as one for divorce according to the special prayer of the bill, or for a decree of nullity under the general prayer, it must be denied; and he concluded as follows: "If, in the opinion of the legislature, sound public policy demands that the jurisdiction of this court be extended to such cases as this, it will so enact." And it did, for the next legislature, that of 1874, incorporated into the revision of the Divorce act of that year section 4, which provides:

"Divorces from the bond of matrimony may be decreed in case the parties, or either of them, were, at the time of such marriage, physically and incurably impotent; and all such marriages shall be invalid from the beginning and absolutely void."

See *Rev. of 1877 p. 315.* On the margin is a note, *"P. L. 1857 p. 399."* This is a mistake. In that year the legislature passed a supplement to the Divorce act dealing only with the time of desertion. This mistake is also in the marginal note in the Divorce act to be found in *Gen. Stat. p. 1267* § *4.* The same mistake has been carried into the note under section 1, subdivision 3 of the Divorce and Nullity acts, of 1907. *Comp. Stat. p. 2022.*

Now, in *Carris* v. *Carris, 24 N. J. Eq. 517,* the court of errors and appeals held (at *p. 522*), reversing Chancellor Zabriskie, that the jurisdiction of the court of ·chancery to annul fraudulent contracts is sufficient to include a contract of marriage, although a new application of it; that the absence of ecclesiastical courts, the existence in the court of chancery of the general jurisdiction stated, and there being no provision in the constitution for a different tribunal, and consent being a common law essential of the marriage contract, all show that that jurisdiction must embrace the right to annul such a contract for sufficient fraud. And Chancellor Runyon, in the case *Anonymous,* construed this decision of the court of errors and appeals as not extending to cases of impotence, because the defect in them was canonical and voidable, and that nullity was effectual only upon pronouncing a decree, remarking that the distinction is between marriages *void* because there is no contract and those which are *voidable* merely, asserting that over the former this court has jurisdiction but not over the latter; and because the legislature had not authorized a dissolution of marriage for impotence, he said it must be presumed to have withheld the power of divorce for that cause, and whether the application before him was to be construed as an application for divorce or for decree of nullity, it must be denied.

But Chief-Justice Beasley, speaking for the supreme court, in *Gulick* v. *Gulick, 41 N. J. Law 13,* said (at *p. 14*) that it was urged that section 4 of the Divorce act, *supra,* was only applicable when there is a fraudulent concealment of the matrimonial impediment of impotence, but that the act would not yield such a meaning; that if such were its office it added nothing to the efficacy of the law as it existed at the time of the enactment, for at that period it had been definitely settled by the court of errors and appeals in *Carris* v. *Carris, supra,* that a fraudulent concealment of the kind in question constituted a ground for which the marriage would be dissolved. The opinion of the supreme court in *Gulick* v. *Gulick*, written by the learned chief-justice, who participated in the decision in *Carris* v. *Carris* in the court of errors and appeals,

is therefore authority for the proposition that both the statute and the inherent jurisdiction of this court to annul contracts for fraud, are invokable and efficacious in cases of impotence. In other words, that a divorce (now nullity) could be granted for impotence under the statute, where there has only been discovery after marriage, or that the marriage could be annulled under the inherent jurisdiction of this court relating to fraud. And the fraud may be either *suggestio falsi* or *suppressio veri*. *Turney* v. *Avery, 92 N. J. Eq. 473.*

There is a line of cases subsequent to *Carris* v. *Carris,* following its doctrine. Among the latest is *Ysern* v. *Horter, 91 N. J. Eq. 189,* wherein Vice-Chancellor Stevenson held that an unconsummated marriage, which is infected with fraud of any kind whatsoever, which would render a contract voidable, is voidable at the option of the injured party if promptly disaffirmed before any change of status has occurred, and that what is sufficient fraud to avoid such a marriage, is the subject of ascertainment in every case in which the complaining spouse alleges that his or her consent was induced by the other's fraud. This includes impotence. See, also, *Dooley* v. *Dooley, 93 N. J. Eq. 18.*

In a recent opinion by former Vice-Chancellor Stevenson, sitting as advisory master in the same case of *Ysern* v. *Horter* (opinion filed September 7th, 1922, *94 N. J. Eq. 135*), he held that a so-called voidable marriage, which the injured party has the option to have declared void *ab initio* during the lifetime of both parties, may at any time before final decree of annulment be ratified and confirmed. This means, of course, that a voidable marriage, which is valid until voided by the court, is, nevertheless, when decree of nullity is pronounced, void from the beginning.

In *2 Bouv. Law Dic. (Rawle's rev.) 527,* it is stated that the distinction between a marriage absolutely void, or one voidable at the election of one or both of the parties, is important; that in the case of the latter the marriage will be treated as valid and binding until its nullity is ascertained and declared by a competent court in a suit instituted for

that purpose, during the lifetime of both parties; but the effect of a sentence of nullity, when pronounced, is to render the marriage null and void from the beginning. It appears therefore that in either case, when a decree of nullity is pronounced, the status of the parties is as though they had never been married, and the result in the last analysis is the same, so that it is quite immaterial whether the decree is obtained for fraud under the general jurisdiction of the court or under its statutory jurisdiction.

Since the petitioner before me has pleaded and proved a case of fraud, she may have a decree of nullity for that cause.

Decree *nisi* accordingly.