PEARL WIGDER, petitioner,

*v.*

MURRAY WIGDER, defendant.

[Decided November 18th, 1936.]

*Mr. Milton M. Unger,* for the petitioner.

*Messrs. Kraemer, Siegler & Siegler,* for the defendant.

CHILD, A. M.

The petitioner, the wife, filed her petition for nullity on the ground that her husband was physically impotent to consummate the marriage. She has sustained the allegations of her petition and a decree will be advised.

The solicitor of the petitioner at the close of the hearing claimed that the petitioner was entitled to alimony, notwithstanding the fact that the marriage will be declared by the decree to be void *ab initio*.

The theory upon which alimony is sought is that there is no practical distinction between a divorce *a vinculo* and an annulment and as sustaining this view cites the case of *Titsworth* v. *Titsworth*, 78 *N. J. Eq.* 47; 78 *Atl. Rep.* 687, which was an annulment suit brought on the ground of nonage. This case merely deals with the effect of the decree of nullity on the issue of the marriage and holds that if there were children of a voidable marriage that these children would be legitimate. This is unquestionably the law but is outside of the point in issue.

There is a distinct difference between an annulment of marriage and a divorce.

"In the case of an annulment, the marriage is destroyed *ab initio*, or else the ostensibly legal relations of the parties are stripped of their colors of legality; whereas in the case of divorce the marriage is merely dissolved, and the relations of the parties are terminated from the date of the decree. * * *" *38 Corp. Jur. 1347 ch. 119; Rooney* v. *Rooney, 54 N. J. Eq. 231* (at *p. 241*); *34 Atl. Rep. 682; Sinclair* v. *Sinclair, 57 N. J. Eq. 222; 40 Atl. Rep. 679* (at *p. 227*).

*2 Schouler on Marriage, Divorce and Domestic Relations* (*6th ed. 1921*) *ch. 1153 p. 1412*, citing *Millar* v. *Millar, 167 Pac. Rep. 394*, says:

"An action for divorce is predicated on a valid marriage and is based on matters occurring since the marriage, while an action for annulment presupposes that the marriage is void or voidable."

While it is true that a voidable marriage is valid for all civil purposes until it is annulled by decree (*Willits* v. *Willits, 107 N. W. Rep. 379*), yet it is well settled that a decree of nullity refers back to the time of contracting and destroys and renders the marriage utterly void *ab initio*, with certain exceptions relating to the legitimacy of children. *Steerman* v. *Snow, 94 N. J. Eq. 9; 118 Atl. Rep. 696; Reisen* v. *Reisen, 105 N. J. Eq. 144; 147 Atl. Rep. 225; Capossa* v. *Colonna, 95 N. J. Eq. 35* (at *p. 38*); *122 Atl. Rep. 378*.

The petitioner claims that this court has inherent power to grant alimony or nullity decrees and in support of this contention cites English decisions and some cases decided in the State of New York. The English decisions cited are all cases that were decided subsequent to the American revolution and are in no way binding on the courts of this state. *Loudon* v. *Loudon, 114 N. J. Eq. 242; 168 Atl. Rep. 840; 89 A. L. R. 904; Steward* v. *Chance, 3 N. J. Law 400.* The New York decisions cited by the petitioner are not in harmony with each other, and the case of *Gore* v. *Gore, 92 N. Y. Supp. 634,* cited, was overruled by the New York court of appeals, in *Jones* v. *Brinsmade, 76 N. E. Rep. 22,* in which the court said:

"I think the learned court in the *Gore Case* failed to appreciate that the status of the parties established by the decree of nullity necessarily relates back to the time of the contract of marriage."

The contention of the petitioner that this court has inherent jurisdiction to grant alimony has been decided adversely in the case of *Biddle* v. *Biddle, 104 N. J. Eq. 313* (at *p. 314*); *145 Atl. Rep. 639,* where the court said:

"The jurisdiction of the court of chancery in matters of alimony is purely statutory. By section 25 of our Divorce act (*2 Comp. Stat. 1910 p. 2035*) alimony may be awarded either pending a suit for divorce or nullity or after a decree of divorce."

This jurisdiction over divorce was conferred on the court of chancery by the Divorce act of 1794 (*Paterson 13*) and even then the jurisdiction conferred to grant divorces was a concurrent one, the legislature having a like power to grant the same by legislative bill until that power was taken away by the constitution of 1844.

Section 25 of the act (*2 Comp. Stat. p. 2035*) concerning divorces cannot be construed so as to permit the granting of permanent alimony in a suit for nullity.

Quoting section 25:

"Pending a suit for divorce or nullity, or after decree for divorce, it shall be lawful for the court of chancery to make such order touching the alimony of the wife. * * *"

The omission of any authority to grant alimony after the decree indicates clearly a legislative intention that no power so to do was intended to be conferred on the court of chancery.

Vice-Chancellor Stevenson, in the case of *Knott* v. *Knott, 51 Atl. Rep. 15,* denied alimony *pendente lite* to a petitioning wife who sought an annulment of her marriage on the ground of bigamy, saying (at *p. 16*) :

"In a suit for divorce, or for a judicial determination that the marriage was void, alimony can be allowed to the woman only in case that it appears by the final decree that the woman may be declared to be the wife of the man."

In *1 R. C. L. ch. 86 p. 939,* the following statement of law is made :

"As the sole basis for the allowance of alimony is the duty of maintenance imposed upon the husband by virtue of the marital relation, it is obvious that if a valid marriage never existed, the alleged husband owes no such duty and consequently cannot be required to pay alimony."

*2 Bish. Mar. & D. (6th ed.) ch. 376 p. 320,* states the following rule :

"From the reasons on which permanent alimony proceeds, the further doctrine is derived that no decree for it can follow a sentence declaring a marriage, whether void or voidable, null from the beginning."

In *Willits* v. *Willits, supra,* the court said :

"To support his wife is one of the obligations assumed by a husband by virtue of his marriage contract, and where, as in this case, the marriage is voidable, a release from such obligation is a part of the relief sought by the husband in a suit to annul the marriage. Permanent alimony is a statutory innovation, and we find no statutory authority for its allowance in a suit to annul a voidable marriage."

In our own state, Vice-Chancellor Pitney, in *G.* v. *G., 67 N. J. Eq. 30* (at *p. 37*) ; *56 Atl. Rep. 736,* said :

"The conduct on her part was a distinct affirmance of the marriage relation. Necessarily so, since there can, I think, be found no foundation in reason or authority for the position that a woman, who seeks a dissolution of the marriage tie on the ground of her husband's impotence, is entitled to

permanent alimony. Such alimony is given where the husband has been guilty of a matrimonial offense, and impotence is not such an offense in any sense of the word in that connection."

Marriage in the contemplation of the law is a contractual relation, in other words, a contract. It is fundamental that one who disaffirms a contract cannot have any of the benefits accruing from it. The petitioner in this case seeks to disaffirm her contract. By so doing, she forfeits her right to support. The application for permanent alimony will be denied for the reasons above given.