83 N.J. Super. 159 (1964)
199 A.2d 69
JUNE L. MINDER, PLAINTIFF,
v.
WILLIAM MINDER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 23, 1964.
*162 Mr. Irving Mandelbaum for plaintiff (Messrs. Irving & Barry R. Mandelbaum, attorneys; Mr. Barry R. Mandelbaum on the brief).
Mr. Ronald Reichstein for defendant (Messrs. Camarata & Colonna, attorneys).
The opinion of the court was delivered by CONSODINE, J.C.C. (temporarily assigned).
Defendant moves to vacate the portions of the judgment nisi in this matter relating to the payment of $150 weekly by the defendant for the support and maintenance of plaintiff; the maintenance of a medical, hospital and surgical policy to her benefit; an order directing trustees William J. Camarata and Irving Mandelbaum to pay over to defendant the balance of $7,500. held in trust by them; and the return to defendant of an insurance policy on his life in the sum of $30,000. The agreement was incorporated in the judgment nisi.
The agreement predicated its benefits on plaintiff's not remarrying.
On March 22, 1962 plaintiff was readmitted to Overbrook Hospital where John Canning was also a patient. On September 7, 1962 plaintiff escaped from the hospital aided by John Canning, and they were married on September 10, 1962 in Elkton, Maryland.
*163 Thereafter, application was made to the Superior Court of New Jersey, Chancery Division, for the appointment of a guardian for plaintiff. After a hearing her sister Nancy L. Busch was appointed as guardian. The guardian then instituted proceedings to annul the purported marriage between plaintiff and John Canning on the ground that plaintiff was incapable of consenting to the marriage by reason of her insanity or incompetency. On February 19, 1964, after a contested hearing, judgment nisi annuling the marriage between the plaintiff and John Canning was entered, which judgment provided:
"* * * That the said pretended marriage between June L. Minder and John V. Canning was from the beginning a nullity and should and shall be deemed to have been and to be null and void, and that the plaintiff and defendant did not and could not thereby contract in marriage, and that they are so far as said ceremony of marriage may affect them each unmarried. * * *"
The questions involved on this motion are:
A. Whether the obligation of a divorced husband to pay alimony will be affected by a subsequent void marriage where such marriage is annuled by reason of the wife's lack of consent occasioned by her mental incapacity to comprehend the nature of her act.
B. Whether the plaintiff's subsequent void marriage is a "remarriage" within the meaning of N.J.S. 2A:34-25, and within the meaning of the agreement incorporated in the judgment nisi?
Out of the confusion in jurisdiction between the ecclesiastical and temporal courts of England grew the distinction between void and voidable marriages. This distinction is firmly rooted both in the common law and in the law of New Jersey. A voidable marriage is valid and not ipso facto void, until sentence of nullity is obtained. A void marriage is void ab initio. The judgment of nullity is merely declaratory that no marriage in law ever existed, while in a voidable marriage the judgment of nullity relates back to the time of the marriage and renders the marriage void. Wigder *164 v. Wigder, 14 N.J. Misc. 880, 188 A. 235 (Ch. 1936). Civil disabilities, such as a prior marriage, want of age, idiocy, inability to consent, and the like, make the contract of marriage void ab initio and not merely voidable. They render the parties incapable of contracting. If persons under these legal incapacities come together, the relationship is meretricious and not a matrimonial one. Therefore, no sentence of nullity is necessary. Carris v. Carris, 24 N.J. Eq. 516 (E. & A. 1873); Steerman v. Snow, 94 N.J. Eq. 9, 118 A. 696 (Ch. 1922). Furthermore, it is to be emphasized that even though a void marriage has never been annulled in a direct proceeding, the said marriage constitutes no obstacle to a valid second marriage. Dunn v. O'Day, 16 A.2d 195, 18 N.J. Misc. 679 (Dept. of Labor, W.C.B. 1940).
N.J.S. 2A:34-1(d) provides that a marriage shall be annulled where one of the parties was at the time of the marriage incapable of consenting thereto. Mutual consent of competent parties to assume a marital status is essential to a marriage in New Jersey. A marriage lacking at its inception the contractual element of mutual consent is totally void and not merely voidable. 10 N.J. Practice Series (Herr, Marriage, Separation and Divorce), § 79, p. 79:
"A marriage is void for lack of consent occasioned by the mental deficiency of one of the parties so that she could not have comprehended the nature of her act."
The issues raised here are novel in this State. However, as a matter of public policy and sound reasoning, the conclusion is inescapable that N.J.S. 2A:34-25 is not applicable to a subsequent void marriage. Hence the defendant in the instant matter is still obligated under the incorporated agreement to make payment for the support and maintenance of the plaintiff. Firstly, the marriage entered into between the plaintiff and Canning was void ab initio without the necessity of a decree from this court, and in New Jersey is looked upon as no marriage at all. Herr, supra. Furthermore, the public policy of this State, as indicated in N.J.S. *165 2A:124-2 which provides that it is a misdemeanor for anyone to marry an insane or feeble-minded person, and in N.J.S.A. 37:1-9 which provides that no marriage license shall issue where one of the contracting parties is of an unsound mind or an inmate of an insane asylum, clearly demonstrates that this State treats a marriage by a person who is of an unsound mind or an inmate of an insane asylum as being void from its very inception.
Herr, in his treatise on Marriage, Separation and Divorce, supra, 11 N.J. Practice Series, § 702, p. 7, discusses the very issue raised in the case sub judice and sets forth the proposition of law which he believed existed in this State:
"The obligation of a divorced husband to pay alimony will not be affected by a subsequent void marriage entered into by the wife where such marriage is declared invalid by a competent court."
However, this issue is not novel in other jurisdictions. In Sutton v. Lieb, 199 F.2d 163, 33 A.L.R.2d 1451 (7 Cir. 1952), the court was faced with the exact issue raised here. In that case, Sutton divorced Lieb in 1939 and the decree for divorce provided for monthly support until she remarries. Sutton in 1944 married H in Nevada. H had obtained a divorce from his first wife also in Nevada. New York then declared H's divorce from his first wife null and void, and thereafter plaintiff sued for an annulment against H in New York because of his prior valid marriage. Plaintiff then instituted suit for alimony from the time of her second marriage on the ground it was annulled. The Court of Appeals applied Illinois law that a bigamous marriage is void and therefore creates neither rights nor duties and imposes no legal obligation on the husband whose marriage is annulled. The court further held that a void marriage must be distinguished from a voidable marriage, since a void marriage is an absolute nullity for all purposes and no judicial proceeding or decree is required to establish its invalidity. It found that the plaintiff's subsequent void marriage was not a remarriage under Illinois law or under the terms of the Illinois divorce decree, *166 since a void marriage is ineffectual to alter the marital status of either party, and both parties in the eyes of the law remain unmarried. The plaintiff was entitled to alimony from her first husband from the time of her subsequent annulled marriage.
In Johnson City County National Bank & Trust Company v. Bach, 189 Kan. 291, 369 P.2d 231 (Sup. Ct. 1962), a husband and wife entered into a trust agreement providing for the support of the wife which income would be reduced upon her remarriage. After her divorce from her first husband, Mrs. Bach married Emerson in Wyoming. Mrs. Bach's marriage to Emerson was bigamous because Emerson had a prior valid marriage. Thereafter Mrs. Bach obtained an annulment. Kansas has a statute similar to N.J.S. 2A:34-25. The terms of the trust agreement providing for reduced payments upon remarriage of the wife were similar to the terms of the agreement in the instant matter. In Kansas a bigamous marriage is void, as well as a marriage for want of mental capacity. The court stated that the obvious purpose of the agreement was to provide support for Mrs. Bach to end upon her remarriage, which contemplated that the remarriage would provide another source of support for her; that this could only be accomplished by a valid second marriage, that is, one giving rise to a marriage status. Therefore, the court held that the event of remarriage within the terms of the agreement required the creation of a valid marriage status and that the plaintiff was entitled to support under the terms of the agreement from the date of entering into the void marriage.
There are other cases presenting similar factual situations. These are not applicable to the case sub judice because the decisions of the courts in these other jurisdictions turn upon statutes which are dissimilar to ours. In states where statutes provide that a wife is entitled to alimony even in the event of a void or voidable marriage, the courts are reluctant to direct the wife's first husband to continue to pay alimony after a subsequent void marriage since an obligation by statute *167 to support accrues against the second husband. Gaines v. Jacobsen, 308 N.Y. 218, 124 N.E.2d 290, 48 A.L.R.2d 312 (Ct. App. 1954). Statutes in other jurisdictions provide that where there is a change of circumstances on the part of the wife, the husband can make application for reduction or termination of alimony, and an annulment of a marriage may constitute such a change of circumstances. Robbins v. Robbins, 343 Mass. 247, 251, 178 N.E.2d 281 (Sup. Jud. Ct. 1961).
Many of the cases in other jurisdictions also turn on the following factors:
1. Whether the wife is entitled to alimony or support from the subsequent invalid marriage.
2. Whether the term "remarriage" means any kind of marriage ceremony which is voluntarily entered into by the wife with the intention of marrying.
3. Whether the marriage that is entered into gives rise to any status and rights on the part of the wife.
4. Whether in the sound discretion of the court principles of justice and fairness dictate a certain decision to avoid an unfortunate result.
5. Whether the principles of estoppel or waiver apply against the wife.
Taking each of the aforesaid factors and applying them to the instant matter we find that none of them is applicable. First of all, in New Jersey a woman is not entitled to alimony or support from a spouse where the marriage is void. Secondly, in New Jersey "remarriage" means a valid marriage ceremony, and a valid marriage ceremony under N.J.S.A. 37:1-9 cannot occur where either of the contracting parties is of an unsound mind or is an inmate of an insane asylum. Thirdly, in New Jersey, a void marriage does not give rise to any status or rights on the part of either of the spouses. Fourthly, sound principles of justice and fairness dictate that Mrs. Minder should continue to receive support from her first husband under the terms of the agreement entered into between them, since such support is a necessity *168 for her care, maintenance and medical attention at the mental institution where she is confined, and for her care and support in the event she is discharged from the institution. Fifthly, it would be illogical to apply principles of estoppel, laches or waiver against the plaintiff in the instant matter in order to bar her right to support from her first husband, where her subsequent void marriage was not voluntarily entered into and she was incapable and incompetent of consenting thereto.
Finally, this matter presents a more compelling and persuasive factual composite than the cases cited or discussed, supra. Here the plaintiff was incapable or incompetent by reason of her mental incapacity to enter into a marriage, while in the cases discussed above the woman voluntarily consented to a marriage and voluntarily intended to enter into a marriage, even though that marriage was subsequently annulled by reason of the fact that it was bigamous or was fraudulent. Therefore, justice and fairness demand that the plaintiff in the case at bar should not be prejudiced or penalized for an act which she committed at a time when she was mentally incompetent and of such an unsound mind that she was unable to comprehend the nature of her act.
The motion is denied.