109 N.J. Super. 410 (1970)
263 A.2d 490
FRANCES W. SHARPE, PLAINTIFF,
v.
LOUIS H. SHARPE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 17, 1970.
*412 Mr. Saul J. Zucker, for plaintiff (Messrs. Zucker, Lowenstein, Gurny & Zucker, attorneys).
Mr. Joel L. Bohrer, for defendant.
POLOW, J.J.D.R.C. (temporarily assigned).
On this application plaintiff seeks an order reviving her right to alimony which had been discontinued upon defendant's motion to eliminate support for her "by reason of plaintiff's remarriage." Plaintiff claims her right to alimony is restored by the annulment of her second marriage.
The sequence of events is important to a fair evaluation of the issues. Plaintiff and defendant were married May 1, 1954, and thereafter resided together until January 18, *413 1965. Four children were born while they lived together and a fifth child of the marriage was born on August 12, 1965 after they had separated. The wife's original action against defendant Sharpe charged extreme cruelty and sought separate maintenance. The complaint was amended before trial to demand an absolute divorce. At the trial on September 29, 1966 defendant withdrew his answer, a divorce was granted and the court approved the terms of an agreement of the parties for custody, support, alimony and a property settlement.
The judgment nisi of October 26, 1966 required defendant to pay $10,000 a year in monthly installments "as and for alimony, support and maintenance for the wife and infant children of the marriage in her custody * * * until the death of either party, or her remarriage * * *." The judgment became final on January 27, 1967 and payments were made under the terms thereof until 1969.
On January 9, 1969 plaintiff participated in a ceremonial marriage to Alan Cavallaro. Within 12 days after that marriage ceremony defendant Sharpe applied for a reduction in support by elimination of alimony. His motion resulted in the May 29, 1969 order which reduced the original $10,000 annual support obligation to $6,000 per annum, retroactive to February 1, 1969. The new award was designated as support for the children only.
During the pendency of defendant's application to reduce the support payments, plaintiff had filed a complaint for annulment against Cavallaro, alleging his impotence as the basis for relief. That complaint was voluntarily dismissed by plaintiff on April 29, 1969 prior to the entry of the order which eliminated alimony. Thereafter, another complaint for annulment was filed by plaintiff against Cavallaro on June 25, 1969 seeking a permanent injunction to prevent Cavallaro from seeing plaintiff's children of her first marriage or ingratiating himself with them and "from taking any steps to enforce his purported right to custody of said children as step-father." The complaint was amended *414 on August 12, 1969 to demand an annulment of the Cavallaro marriage on the ground of his alleged impotence. Cavallaro did not contest and a judgment was entered on November 14, 1969 declaring that he was incurably impotent at the time of the marriage, that he had misrepresented this fact to plaintiff, that she was ignorant of the true fact and had relied upon his representation, and that upon learning the true fact she had separated herself and did not ratify the marriage. That marriage was thereupon adjudged "from the beginning a nullity, and should and shall be determined in all courts of law and equity, and in all places to be null and void * * *."
On this application we must decide whether the previous obligation of defendant Sharpe to pay alimony to his former wife, having been eliminated by order of this court following her ceremonial remarriage, was revived when the subsequent remarriage was declared a nullity.

I
Wife support at common law could be awarded only after a judgment of divorce a mensa et thoro, that is, after a limited or bed and board divorce equivalent to a judicial separation. The English ecclesiastical courts had provided support for wives living separate from their husbands under such decrees, courts of law having no power to act. There were no absolute divorces for most English wives until the middle of the last century except for those rich or powerful enough to obtain relief by an act of Parliament.
The rationale supporting alimony in limited or bed and board divorces was based at common law upon the husband's status as compared to that of his wife in the days of the ecclesiastical courts. The husband, after marriage, took all of his wife's personal property as well as income, rents and profits from her real estate. This naturally carried with it an obligation to support which would traditionally be provided in the family home. When the court authorized the *415 wife to separate and live apart from her husband because of his cruelty or adultery it was logical to require him to provide for her support. After all, he still kept her personal property and her income.
Under the common law in New Jersey, as in England, there was no absolute divorce, but following the example of the ecclesiastical courts, alimony had been awarded as an incident to limited divorce. Marriages terminated for causes which rendered the relationship void ab initio did not give rise to a duty of support, there having been no marriage in the eyes of the law.
Statutory authority for alimony was included with the creation of the original right to absolute divorce in this State in December 1794. Lynde v. Lynde, 64 N.J. Eq. 736, 751, 58 L.R.A. 471 (E. & A. 1902). The Court of Chancery was given jurisdiction to award alimony to enforce "the continuing duty of support which the husband owed to the wife, and of which he was not permitted to absolve himself by his own misconduct, although that misconduct resulted in a dissolution of the marriage." Originally, divorce was possible in New Jersey not only on grounds of adultery and extreme cruelty but also "on account of the parties being within the prohibited degrees." The latter ground was eliminated in 1820, but permanent alimony was permitted again irrespective of the cause of divorce. Lynde v. Lynde, supra, at 752-753.
Except as may be created by statute, then, there was and is no right to alimony where a marriage is declared a nullity, since the duty to support after the termination of a marriage is strictly a legislative creation, there having been no absolute divorce at common law, and the statute itself having delineated the areas in which support may be granted. N.J.S. 2A:34-23 provides the authority to award alimony only "after judgment of divorce or maintenance." The omission of such authority after judgment of nullity indicates a legislative intent that there be no power to grant alimony in the event of a void or annulled marriage. *416 Wigder v. Wigder, 14 N.J. Misc. 880 (Ch. 1936). It is therefore evident that in this State plaintiff could not seek support from Cavallaro after her annulment decree[*], although such a demand would have been quite appropriate had she obtained a judgment of divorce against her second husband.
[*] There is authority for pendents lite support for a wife even during annulment proceedings. N.J.S. 2A:34-23; Barnes v. Barnes, 138 N.J. Eq. 504 (E. & A. 1946). Plaintiff, however, made no such application against Cavallaro.
Under common law, plaintiff would have had no personal assets or income. Her first husband would have taken control of her personal property and received her income. She would have had no rights at all against her second husband then  there having been no right to remarry at all. However, as the common law has been modified through the years, husbands have been stripped of their absolute control over the property of their wives. Absolute divorces have been authorized by law in every state, and married women now retain control over their own property. Nevertheless, the obligation of a husband to support has been extended in most jurisdictions to divorced wives. A husband is now liable not only for support in case of limited divorce or judicial separation where the marriage tie is kept intact but in most states he is also required to pay alimony after the dissolution of the marriage by absolute divorce, although some jurisdictions still retain the common law concept of alimony despite statutory authority for absolute divorce and declare the award of support after absolute divorce to be against public policy. See Rayfield v. Rayfield, 242 N.C. 691, 89 S.E.2d 399 (Sup. Ct. 1955); McElreath v. McElreath, 162 Tex. 190, 345 S.W.2d 722 (Sup. Ct. 1961); Hooks v. Hooks, 123 Pa. Super. 507, 187 A. 245 (Super. Ct. 1936).
Although our Legislature provided the power to award alimony after absolute divorce, the award itself remains a *417 matter of judicial discretion. According to (Herr, Marriage, Divorce and Separation), 10 N.J. Practice Series, § 634, at 529, "the provisions of Section 2A:34-23 are permissive rather than mandatory, and the court will administer the remedies thereunder in such a manner as to prevent inequity and to show due regard for considerations of comity and expediency." The viability of the award of alimony is emphasized by the last sentence of the statutory provision itself: "Orders so made may be revised and altered by the court from time to time as circumstances may require." N.J.S. 2A:34-23.

II
N.J.S. 2A:34-25 contains the mandatory requirement that the court vacate all support for the wife upon application of the former husband if the former wife shall remarry. Defendant herein took advantage of that statute, made an application and was relieved of the payment of alimony by this court after plaintiff's remarriage in 1969. Now, plaintiff insists upon her right to have alimony revived and, in fact, argues that it should operate retrospectively, demanding that defendant pay back alimony for the entire period during which he had been relieved by court order. She relies on Wigder v. Wigder, supra, for the proposition that the court has no power to award alimony against Cavallaro; she relies on Minder v. Minder, 83 N.J. Super. 159 (Ch. Div. 1964) for the claim that her alimony should be revived. Minder held that the obligation to pay alimony was not terminated by a subsequent ceremonial marriage of the former wife which was void because of her insanity and consequent lack of capacity to contract a valid marriage. After discussing the basic distinction between void and voidable marriages, a distinction which "is firmly rooted both in the common law and in the law of New Jersey," the court determined that the second marriage had been absolutely void. Under such circumstances, where there is a lack of capacity to consent or idiocy or a prior existing *418 marriage, the incapacitated party is not capable of contracting the marriage and the relationship is meretricious. In fact, no judgment of nullity is necessary in those cases, the marriage being absolutely void ab initio. Steelman v. Snow, 94 N.J. Eq. 9 (Ch. 1922); Minder v. Minder, supra. 83 N.J. Super., at 164.
The present situation is quite different. The marriage with Cavallaro could have been ratified by plaintiff upon her discovery of the impotence of her partner. Therefore, it is quite clear that the marriage was voidable and not absolutely void. Grobart v. Grobart, 107 N.J. Eq. 446 (Ch. 1931), aff'd 109 N.J. Eq. 129 (E. & A. 1931); Godfrey v. Shatwell, 38 N.J. Super. 501 (Ch. Div. 1955).

III
There is no reported authority in New Jersey on the right to revival of alimony where a voidable second marriage has been annulled. Other jurisdictions have taken varied approaches to the problem. A brief discussion of three basic views in other states is appropriate here.
Although New York now has a statute authorizing an alimony award after a judgment of annulment, N.Y. Domestic Relations Law, McKinney's Consol. Laws, c. 14, § 236, it is fairly recent. An interesting trend was discernible prior to its enactment in 1954 (as § 1140-a of the Civil Practice Act). Justice (then Judge) Cardozo wrote an opinion in 1928 in a case which revived the obligation contained in a separation agreement providing for alimony to "continue as long as the wife remains unmarried." The parties were later divorced, the former wife remarried and the former husband discontinued alimony payments for three years. The second marriage was annulled because of the fraud of the second husband under circumstances characterized by the court as rendering the remarriage "voidable." The former wife was declared "unmarried" under the terms of the separation agreement and therefore the first husband was required to renew support payments. However, he was *419 not held liable for support while the former wife remained married to her second husband because she would have then been unjustly enriched. "During all the years that [the second marriage] continued, or at least till action was begun, the second husband was chargeable with a duty of suitable support." Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501, 503 (Ct. App. 1929).
At the time of the Sleicher decision, New York had no statutory provision for alimony after annulment, as it presently provides. Thus, one of the arguments supporting that decision was that she would receive no support at all if not entitled to support from her first husband. An interesting New York decision since the creation of the statutory authority for alimony after annulment suggests that the Court of Appeals no longer follows the rationale of Sleicher. In Gaines v. Jacobsen, 308 N.Y. 218, 124 N.E.2d 290 (Ct. App. 1954), the second husband had died before the decision on appeal but after the annulment had been granted. In reviewing plaintiff's argument for support from her first husband, the court held that her remarriage was an election and an abandonment of any right to support from husband number one. After her remarriage, her first husband had the right to "regard himself as free of the duty to support her. He could then assume new obligations  he could himself remarry, if he were of a mind to, but his means limited  without remaining forever subject to the possibility that his first wife's remarriage would be annulled and the burden of supporting her shifted back to him. (At 293-294)
As a practical matter, Gaines, arrived at precisely the result that Sleicher sought to avoid  the wife remained without any source of support whatever. This did not alter the conviction of the appellate court that by her remarriage the former wife had made a choice by which she was bound, "although subsequent events prove it to have been an improvident one."
The Supreme Court of California faced the same issue as Sleicher with the opposite result in 1955. Sefton v. Sefton, *420 45 Cal.2d 872, 291 P.2d 439 (Sup. Ct. 1955), held that the right to alimony was not revived by annulment of the second marriage:
* * * By the celebration of marriage she held herself out as having remarried. The defendant was entitled to rely upon her apparent marital status after the ceremony. If Mrs. Sefton's new marriage was subject to annulment for fraud as provided for in subdivision four of section 82 of the Civil Code, or for the incapacity of her new husband to enter upon the marriage state as provided for in subdivision six, or for any reason stated in subdivisions one, three and five of that section, the marriage would be voidable only. Redress by way of annulment might never be sought by the offended party and the marital status might thus continue indefinitely. The causes for annulment thus provided for by statute are ordinarily known to or concern only the individual contracting parties. The divorced spouse, the defendant here, may never know of the circumstances which make his former wife's new marriage voidable. Certainly knowledge of such voidability may not be imputed to him. After the ceremony took place he could properly assume, in accordance with section 139 and the property settlement agreement, that his obligation to pay alimony had ceased. He was then entitled to recommit his assets previously chargeable to alimony to other purposes. Under such circumstances it would be improper to reinstate his alimony obligation. While it is true that both the plaintiff and defendant may be deemed to be innocent parties, it accords with the policy of the law to look less favorably upon the more active of two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger. Here it is clear that Mrs. Sefton was the active party who brought herself and the defendant into their present situation. Accordingly, it is she who should asume the responsibility for it. [291 P.2d, at 441-442.]
The California statute terminating the alimony obligation is self-operating "upon the remarriage of the other party." Although our statute requires an application by the former husband, the right to terminate alimony is just as absolute in this State. The significance of Sefton is its holding that a voidable marriage, although later annulled, is nevertheless a "remarriage" under the statute. Subsequently, an appellate decision in California applied the same reasoning to a void second marriage: "We find no persuasive reason for distinguishing between the effects upon *421 alimony of a void and a voidable remarriage. Either constitutes a remarriage under section 139 of the Civil Code; either terminates the alimony rights of the remarried spouse." Berkely v. Berkely, 269 Cal. App.2d 872, 75 Cal. Rptr. 294 (Ct. App. 1969).
The Supreme Court of Colorado arrived at the same conclusion on the grounds of public policy, without regard to whether the remarriage annulled had been void or voidable. Torgan v. Torgan, 159 Colo. 93, 410 P.2d 167 (Sup. Ct. 1966). In Mississippi, the Supreme Court adopted the same rule in a case of novel impression in that state where the annulled second marriage had been voidable even though there is no Mississippi statute relieving the former husband of alimony payments upon the remarriage of the other party. The decision of that court was based upon the voluntary action of the wife in entering into a second marriage, an election which relinquishes her right to support from the former husband. Bridges v. Bridges, Miss., 217 So.2d 281 (Sup. Ct. 1968). Louisiana treats the remarriage as a termination of the right to alimony which is not revived by annulment whether the remarriage is void or voidable. Keeney v. Keeney, 211 La. 585, 30 So.2d 549 (Sup. Ct. 1947). Florida has refused to revive the right to alimony where the annulled second marriage was voidable. Evans v. Evans, 212 So.2d 107 (Fla. Ct. App. 1968).
Massachusetts considered both the New York and California lines of cases and rejected both theories:
We are of opinion that under our statutes the circumstances of a later marriage and its annulment must be examined in each instance to determine whether they constitute a significant change in circumstances occurring after the original decree. There should be no hard and fast rule one way or the other. The relation-back principle effacing the marriage may in many cases result in there being no such significant change in circumstances as would justify modification. But cases can readily be imagined where it would be unrealistic as well as unjust to hold that the annulled remarriage did not constitute a significant change of circumstances. Such a case, for example, would be one where there had been a change of position by the husband in reliance on the later marriage. There are doubtless *422 others; we make no attempt to list them. The question is whether there has been a real, as distinct from an apparent, change of circumstances. [Robbins v. Robbins, 343 Mass. 247, 178 N.E. 2d 281, 284 (Sup. Jud. Ct. 1961)].
The Massachusetts court, having found no change of circumstances, ordered the alimony obligation of the former husband continued. The Massachusetts view, that the change of circumstances rationale be applied to determine whether the alimony obligation terminates, is shared by the Supreme Court of Utah. Cecil v. Cecil, 11 Utah 2d 155, 356 P.2d 279 (Sup. Ct. 1960).
The substantial weight of authority favors permanent termination of the obligation to pay alimony upon the remarriage of the wife, and the permanency of the termination is not affected by annulment of her second marriage. The weight of authority is even greater where the annulled remarriage is voidable rather than void.

IV
Defendant argues that he changed his circumstances upon learning of plaintiff's remarriage in that he incurred additional expenses with the knowledge that he no longer would be required to pay alimony. In fact, he sought and he obtained an order reducing support by elimination of alimony. However, we must recognize the reality that there is no certainty for either party where alimony is concerned. Modifications based upon changing circumstances are common and take place even where the parties have formalized their arrangements by written agreement.
On the other hand, plaintiff's remarriage was a voluntary act, knowingly performed, and constituted an election by her to substitute the obligation of her second husband to support her in place of alimony from her first husband. The marriage was valid until the judgment of annulment was entered, despite the insistence of plaintiff that the judgment of nullity relates back to the time of the marriage. *423 Certainly, the second husband had an obligation to support her during the duration of the second marriage and plaintiff could have applied to the court for support from him during the pendency of her annulment proceedings, which she chose not to do.
The second marriage could have been ratified by plaintiff after she obtained knowledge of the fraud, but she elected to proceed with the annulment action knowing that if successful she would terminate any obligation for support by her second husband, and his failure to contest the annulment suit gave him some confidence that his obligation would terminate. Her voluntary decision to enter into the ceremonial second marriage and the further decision on her part not to ratify that marriage was an election which relinquished her right to support from defendant.
Upon plaintiff's remarriage, which was valid until annulled, defendant had the right to regard himself as free of the duty to support his former wife, to assume new obligations and to rely upon his new status without remaining forever subject to the possibility that the obligation to pay alimony might be revived in the event of an annulment proceeding which was completely within the power of plaintiff to pursue or not as she might see fit.
Plaintiff's application for an order restoring her right to alimony is therefore denied.